David SWAZO, Petitioner,

v.

The STATE of Wyoming, Respondent.

No. 90–279.

Supreme Court of Wyoming.

Nov. 26, 1990.

ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL; AND ORDER DENYING PETITION FOR WRIT OF CERTIORARI

Petitioner herein having filed a Motion to Proceed in Forma Pauperis; a Motion for Appointment of Counsel and a Petition for Writ of Certiorari to the Wyoming Supreme Court to review a decision by the District Court, Third Judicial District, Sweetwater County, Wyoming in the case entitled David Swazo v. State of Wyoming, Criminal No. 86–66, and it appearing that such writ should not be issued, it is therefore

ORDERED that Petitioner's Motion to Proceed In Forma Pauperis is hereby granted; and it is further

ORDERED that Petitioner's Motion for Appointment of Counsel is hereby denied; and it is further

ORDERED that Petitioner's Petition for Writ of Certiorari is hereby denied.

URBIGKIT, C.J., and THOMAS, J., would have granted Petitioner's Petition for Writ of Certiorari.

URBIGKIT, C.J., filed an opinion in dissent.

URBIGKIT, Chief Justice, dissenting.

This court declines to review the district court's denial of David Swazo's petition for post-conviction relief brought under W.S. 7–14–101 through 7–14–108.[1] Because this court violates W.S. 7–14–103(a)(i) and Wyoming constitutional law when it declines to *review* a district court's denial of a post-conviction petition, I dissent. In short, if post-conviction petitions are brought to remedy violations of constitutional rights that could not have been raised on appeal, then declining to *review* a district court's denial of a petition for post-conviction relief forecloses even any evaluation of the *potential* for constitutional violation in securing a conviction. This, I believe, necessarily violates W.S. 7–14–103(a)(i) and substantive due process under Wyoming's constitutional law.

Although I am convinced that neither the legislature nor this court "can constitutionally deny [the] opportunity to a defendant-petitioner," *Stogner v. State*, 792 P.2d 1358, 1368 (Wyo.1990), Urbigkit, Justice, specially concurring, to apply for relief from any alleged constitutional error during the post-conviction process, my dissent here is based upon much narrower grounds.

W.S. 7–14–103(a)(i) indicates a claim of constitutional violation is "procedurally barred and no court has jurisdiction to decide the claim if the claim * * * [c]ould have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction[.]" Even assuming, for the sake of argument, that the legislature can control this court's appellate jurisdiction,[2] W.S. 7–14–103(a)(i) allows a constitutional claim to be brought if that claim could *not* have been raised in direct appeal.[3] The controlling question to W.S. 7–14–103(a)(i) becomes "what constitutional claims could not be raised in direct appeal?" Inevitable discussion of waiver and forfeiture of rights *guaranteed* by the Wyoming Constitution employ a high degree of sophistry and factual invalidity. Waiver and forfeiture normally and unquestionably result from what the representing attorney does or fails to do and not what is done to their client, the accused defendant. Waiver and forfeiture comes inevitably charged with counsel mistake and ineffectiveness. *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988), Urbigkit, Justice, dissenting.

Ineffectiveness of appellate counsel and newly discovered evidence are obviously appropriate claims for post-conviction relief, *see Cutbirth*, 751 P.2d at 1260, but so too are "new rules" of constitutional law. "New rules" can be understood simply as new expressions of bedrock constitutional values that have become necessary to protect against new forms of governmental intrusion. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334, *reh'g denied* —— U.S. ——, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989)[4] addresses "new rules"

---

1. Swazo's first issue in his petition for post-conviction relief was for ineffectiveness of counsel. Swazo's first defense attorney withdrew from representation after his campaign for election as County Attorney proved successful in November 1986.

2. *See* Wyo. Const. art. 5, §§ 2 and 3.

3. W.S. 7–14–103(d) provides that "[n]o petition under this act shall be allowed if filed more than five (5) years after the judgment of conviction was entered."

4. Two previous examples of "new rules" are the rule that the "Eighth Amendment prohibits the execution of prisoners who are insane * * *" and the *"per se* rule excluding all hypnotically refreshed testimony [because it] infringes impermissibly on a criminal defendant's right to testify on his behalf * * *." *Teague*, 109 S.Ct. at 1070. Any citation of *Teague* does not suggest

of federal constitutional law which have become needed to protect these bedrock constitutional values. These "new rules" reflect values both " 'implicit in the concept of ordered liberty,' " *Id.* 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971)), and so "rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). The idea of new rules "implicit in the concept of ordered liberty" is rooted in the traditions and consciences of our national community. An obvious example is *Gideon v. Wainwright,* 372 U.S. 335, 349, 83 S.Ct. 792, 799, 9 L.Ed.2d 799 (1963), which articulated the "new rule" that the right to counsel is a necessary condition precedent to any conviction for a serious crime. For additional examples, see *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (Arkansas' per se rule excluding all hypnotically refreshed testimony infringes impermissibly on a criminal defendant's right to testify); *Ford v. Wainright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (the Eighth Amendment prohibits the execution of insane people); and *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979) (our right to trial by jury is violated by convictions obtained by a nonunanimous six person jury). The possibility always exists that a new rule of constitutional law may be required to protect constitutional values implicit in the concept of ordered liberty. Because a defendant could not have necessarily raised a new rule during an appeal until that rule had been made legally cognizable by this court, this court should review district court denials of post-conviction relief petitions.

This court should not treat as unfamiliar the concept of "new rules" or "new rights" " 'implicit in the concept of ordered liberty,' " *Mackey,* 401 U.S. at 693, 91 S.Ct. at 1180 (quoting Justice Cardozo in *Palko v. State of Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)), which are formulated to protect bedrock constitutional values. Although not expressly reserved in the Wyoming Constitution, this

approval to apply the application of its cribbed and regressive judicial legislation to the proper utilization of the Wyoming Constitution. That case may now provide the "bare minimum" for constitutional responsibility of the federal judiciary and is to be so recognized, but in no way confines responsibility of the Wyoming Supreme Court for determinate protection of the Wyoming Constitution. I would agree with scholastic and judicial recognition that *Teague,* in deliberate diminution of constitutional protections, stands alone as a watershed in effecting "massive changes, unsupported by precedent [and without] * * * reasonable foundation." *Id.* at 1090, Brennan, Justice, dissenting. *Cf. Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), Scalia, Justice, concurring in part and dissenting in part; Boshkoff, *Resolving Retroactivity After Teague v. Lane,* 65 Ind.L.Rev. 651 (1990); Supreme Court Review, *Sixth Amendment—The Evolution of the Supreme Court's Retroactivity Doctrine: A Futile Search for Theoretical Clarity,* 80 J.Crim.L. & Criminology 1128 (1990); Recent Development, *The Court Declines in Fairness—Teague v. Lane, 109 S.Ct. 1060 (1989),* 25 Harv.C.R.C.L.L.Rev. 164 (1990); Hoffmann, *Retroactivity and the Great Writ: How Congress Should Respond to Teague v. Lane,* 1990 B.Y.U.L.Rev. 183 (1990); Weisberg, *A Great Writ While it Lasted,* 81 J. of Crim.L. & Criminology 9 (1990); and Goldstein, *Expediting the Federal Habeas Corpus Review*

*Process in Capital Cases: An Examination of Recent Proposals,* 19 Cap.U.L.Rev. 599 (1990). *See also Miller v. State,* 784 P.2d 209, 214 (Wyo. 1989), Urbigkit, Justice, dissenting; *Schuler v. State,* 771 P.2d 1217, 1222 (Wyo.1989), Urbigkit, Justice, dissenting; and Note, *Post Conviction Relief: Do It Once, Do It Right and be Done With It,* XXIV Land & Water L.Rev. 473 (1989). Note also in recent analogy of the Romans salting the earth of defeated Carthage, Chemerinsky, *Stunting the Constitution's Growth,* 26 Trial 36 (November 1990).

*Teague* does, however, portray a limit in its application of constitutional principles that the federal judiciary has not abdicated for enforcement of the United States Constitution in concepts of fundamental fairness. *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, *reh'g denied* 395 U.S. 931, 89 S.Ct. 1766, 23 L.Ed.2d 251 (1969).

This court, by the present unexplained petition, denial, decision and rejection of a right of appeal, provides no plain statement otherwise creating possible defenses of procedural default which might be applied to disallow further proceedings. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Nunnemaker v. Ylst,* 896 F.2d 1200 (9th Cir.), *cert. granted* —— U.S. ——, 111 S.Ct. 384, —— L.Ed.2d —— (1990).

court articulated a "new right" to protect bedrock constitutional values when we made legally cognizable the unenumerated "right to associate with one's family [as] a fundamental liberty * * *," *Matter of GP*, 679 P.2d 976, 981 (Wyo.1984), under Wyo. Const. art. 1, § 2, "Equality of all"; art. 1, § 6, "Due process of law"; art. 1, § 7, "No absolute, arbitrary power"; and art. 1, § 36, reserved rights clause. *See Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 872 n. 10 and n. 11 (Wyo.1990).

Is there potentially nothing that happened during the conviction process, which deprived this citizen of liberty for fifteen to twenty-five years, that could violate bedrock constitutional procedures "implicit in the concept of ordered liberty?" *See Mackey*, 401 U.S. at 693, 91 S.Ct. at 1180. Can we ever be so certain that the answer to this type of question must be "no" that we can constitutionally and statutorily deny *review* of a district court's denial of a post-conviction relief petition?

Is appellate protection against coerced confessions and guilty pleas a bedrock constitutional principle implicit in the concept of ordered liberty? Although not all constitutional errors require reversal if "the court [is] able to declare a belief that [the error] was harmless beyond a reasonable doubt," *Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, *reh'g denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), "there are some constitutional rights so basic to a fair [conviction] that their infraction can never be treated as harmless error * * *." *Id.* at 23, 87 S.Ct. at 827. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin*, a case reviewing the sentence of death by electrocution given to a young man for the crime of robbery, the United States Supreme Court reversed the conviction on substantive due process grounds because the trial judge had not ensured that the defendant's guilty plea had been voluntary. "[A] plea of guilty is more than an admission of con-duct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." *Id.* 89 S.Ct. at 1712. *See Gist v. State*, 768 P.2d 1054, 1056 (Wyo.1989) (*Boykin* mandates substantive due process for criminal defendants). The possibility of ignorance, coercion, or terror requires appellate judges to assure confessions are voluntary. It is apparent that requiring a factual basis for a guilty plea becomes integral to that assurance. If a district court cannot establish a factual basis for a guilty plea, it seems possible that the "confession" may have been the result of ignorance, incomprehension, terror, inducement, or subtle or blatant threats. Because such a possibility cannot be foreclosed, we should not deny *review* of this post-conviction relief petition.

Did the district judge require the defendant to establish a factual basis for the guilty plea [5] to ensure the plea was voluntary and not coerced—if nothing else—from being forced to live in prison for more than a year without being brought to trial? Do bedrock constitutional values of appellate substantive due process in Wyoming require this court to assure that guilty pleas have been made willingly and are grounded in fact? Surely no one in authority today argues to the contrary. The history, heritage and specific phraseology of W.R.Cr.P. 15(d) as well as W.R.Cr.P. 15(f) should establish the constitutional nature and confined application of the guilty plea. *Cardenas v. Meacham*, 545 P.2d 632 (Wyo. 1976).

> The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions be-

---

5. W.R.Cr.P. 15(f) provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

tween the attorney for the state and the defendant or his attorney.

W.R.Cr.P. 15(d).

Swazo's petition for writ of certiorari alleges that, although the district judge could not find time to bring Swazo to trial during the many hundreds of days that Swazo was forced to live in prison, the district judge finally did find the time in his schedule to have Swazo brought before him once Swazo agreed to plead guilty and be sentenced. Swazo also alleges, inter alia, that when he pled guilty he was denied the facts needed to establish the elements for first degree sexual assault.[6]

The following excerpts are taken from the transcript of Swazo's "change of plea/sentencing" appearance before the district judge:

COURT: Mr. Swazo, how [do] you plead to the charge of First Degree Sexual Assault, guilty or not guilty?

MR. SWAZO: I plead guilty, Your Honor.

Later in the transcript, the dialogue continues:

COURT: You make it sound like she got in the backseat willingly.

MR. SWAZO: She came to the backseat willingly.

\* \* \* \* \* \*

COURT: Did she resist you at all?

MR. SWAZO: No.

COURT: Not at all?

MR. SWAZO: (Shaking head).

\* \* \* \* \* \*

COURT: Didn't she resist you at all?

MR. SWAZO: No, Your Honor.

I cannot find in the transcript where Swazo establishes a basis in fact for his guilty plea to first degree sexual assault as required by W.R.Cr.P. 15. In fact, it was the district judge and not Swazo who insisted on Swazo's guilt before he sentenced Swazo to fifteen to twenty-five years in prison.

COURT: Then you performed your little tricks with her. The two men in the front of the truck cheered while she was being raped. Is that true?

MR. SWAZO: No, Your Honor.

From the perspective of bedrock constitutional procedures, I find foreboding the remarks made by the district judge when he denied Swazo's petition for post-conviction relief. The judge said he realized Swazo's "conviction" would have to have been reversed had Swazo *appealed* his conviction, but he denied Swazo's petition for post-conviction relief because "post-conviction relief was never meant to become an *extended* appellate procedure \* \* \*." (Emphasis added.) Because Swazo did not appeal, this court also understands that Swazo's fate is sealed by res judicata. *See Stogner,* 792 P.2d at 1360 and *Gist,* 768 P.2d at 1055.

The reasoning that leads me to believe that this court's refusal to *review* a denied petition for post-conviction relief necessarily violates W.S. 7–14–103(a)(i) also convinces me that the denial simultaneously violates substantive due process guarantees under Wyoming's constitution. I understand appellate substantive due process to require *review* of potential breaches of bedrock constitutional principles. I would not deny such review because that permits potentially harmful constitutional violations by trial judges to be quietly swept under our procedural carpet.

---

**6.** W.S. 6–2–302 provides:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats;

(iii) The victim is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented; or

(iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct.

My understanding of Wyoming appellate substantive due process is formed, in part, by my belief in and understanding of natural rights. "There are those who maintain that man has no natural rights; that none can exist except in society, and that whatever rights he has, he, accordingly, receives from society. However that may be theoretically, natural rights are recognized by our constitution." *State v. Langley*, 53 Wyo. 332, 342, 84 P.2d 767, 770 (1938). While I agree that individual rights and majoritarian rule are treated as relative to one another and are therefore subjected to "balancing," I believe we violate Wyoming's appellate substantive due process when we deny *review* of a denied post-conviction relief petition. Some delegates to Wyoming's constitutional convention relied upon the notion of a right to appeal as a natural right.[7] So do I—and I understand that constitutional right to inform the power of our post-conviction statute, W.S. 7–14–103, but this court is skeptical that such a right extends to require *review* of denied petitions for post-conviction relief. The difference between the majority and myself in this regard is one of attitude toward resolving the tension between individual rights and majority rule.

From elementary school on, we have all been raised on the truism that our political tradition contains two components—a commitment to majority rule and a commitment to individual rights—that these two components are often in a state of conflict or tension. The crucial operative aspect of rights skepticism is its attitude toward the resolution of this systemic tension. When a rights-supporting value of the Constitution is understood to be in arguable conflict with majority conduct, the rights skeptic insists that the case for the recognition of the right be made only under circumstances of textual, historical, or structural certainty; otherwise the majoritarian result must prevail. Under this conception, rights are narrowly defined exceptions to an otherwise prevailing general commitment to majority rule.

\* \* \* \* \* \*

\* \* \* For the rights skeptic, rights exist as a function of majority will; they exist because they are, or at least they were, willed by the majority. Harmony with our constitutional tradition, in contrast, demands an analytical structure pursuant to which both majority will and individual rights pend to a common seminal principle. One likely candidate is the principle that individuals are to be treated as individuals possessed of discrete and equal worth.

Sager, *Rights Skepticism and Process–Based Responses*, 56 N.Y.U.L.Rev. 417, 441–45 (1981). The "balance" we strike between individual rights and majority power *should* be kept in harmony with our constitutional tradition. If we accept a constitutional tradition in which we are unified as a national community by our political commitment to individual rights and majority rule, then we should not proceed from the premise that the balance we strike between the two is a "fixed winner-take-all [result that is dictated] by the majority's wishes." *See* Dworkin, *Liberal Community*, 77 Cal.L.Rev. 479, 483–84 (1989). Our constitutional tradition does not encourage a legal landscape over which majority rule roams at will. The value of this harmonious balance between rights and power in Sager, *supra*, 56 N.Y.U.L. Rev. 417, appears very similar to the "golden mean" alluded to by Chief Justice Blume when he wrote to preserve substantive due process under Wyoming constitutional law during the sudden economic legislation occasioned by the Great Depression. *Langley*, 84 P.2d at 771–72.

This court's confidence in the judgment of the district judge permits them to refuse to *review* that judgment. Before government deprives any of us of our lives, our liberties, or our properties, that process should be checked, double checked, and tri-

---

**7.** *Journals and Debates of the Wyoming Constitutional Convention* 520–21 (1889).

ple checked. While I leave it to the legislature to protect citizens from citizens, I believe courts are required by the constitution to protect citizens from government. In this case, there is no protection provided. For that reason, in conscience, I am called to dissent.