725 P.2d 744

Noah L. BROADHEAD,
Plaintiff-Appellee,
Cross-Appellant,

v.

ARIZONA BOARD OF PARDONS AND PAROLES; John J. Sloss, Chairman, Richard M. Ortiz, Vice-Chairman, Arter L. Johnson, Vice-Chairman, Robert L. Araza, Patricia V. Gilbert, Ron Johnson, Robert W. Kennerly, Members, Real Parties in Interest, Defendants-Appellants, Cross-Appellees.

Noah L. BROADHEAD,
Plaintiff-Appellant,

v.

Samuel A. LEWIS, Director for the Department of Corrections; Lloyd Bramlett, Warden, Arizona State Prison; Ernest Salazar, Deputy Warden, ASP–OT unit, State of Arizona, Defendants-Appellees.

Nos. 1 CA–CIV 8387, 1 CA–CIV 8527.

Court of Appeals of Arizona,
Division 1, Department D.

May 15, 1986.

Review Denied Sept. 16, 1986.

Robert K. Corbin, Atty. Gen. by Susan Slasor and Richard F. Albrecht, Asst. Attys. Gen., Phoenix, for State.

Noah L. Broadhead, in pro. per.

## OPINION

GRANT, Presiding Judge.

The plaintiff Noah L. Broadhead (Broadhead) was convicted of second degree rape in the Maricopa County Superior Court on November 19, 1975, under the former criminal code. He was sentenced to not less than 5 nor more than 15 years. Broadhead was granted parole by the defendant Arizona Board of Pardons and Paroles (Board) on March 8, 1980; at that time his parole expiration date was February 22, 1985. On September 11, 1984, a warrant was issued for Broadhead, alleging that he had violated the conditions of his parole as follows:

1) Noah Broadhead, DC # 34963, violated revised Condition of Supervision # 4 as evidenced by his alleged commission of Aggravated Assault on August 29, 1984. Noah Broadhead was arrested at the scene by [the] Phoenix Police Department....

2) Noah Broadhead, DC # 34963, violated revised Condition of Supervision # 5 as evidenced by his allegedly being in possession of a deadly weapon on August 29, 1984, to wit: a knife, 4" folding pocket type....

Subsequently, a preliminary hearing to determine whether there was probable cause to believe a violation occurred and a final revocation hearing were held. Broadhead was notified by letter of October 31, 1984 that his parole was revoked because

[t]he Board has reason to believe you are lapsing back into criminal ways as evidenced by your admission that you were involved in an altercation which resulted in you stabbing another individual, and that you were in possession of a knife.

Parole will be revoked and you will forfeit four (4) years, five (5) months street time.

Broadhead filed two actions in Maricopa County Superior Court. Cause No. C–532594 sought relief by way of special action for alleged violations of his constitutional rights and for the state's failure to comply with certain statutes in the revocation process. The trial judge found a violation of due process in allowing witnesses to testify at the revocation proceedings although they were not under oath. The judge ordered the Board to vacate its order revoking Broadhead's parole and to conduct any further preliminary and revocation hearings with witnesses placed under oath. He denied relief on other grounds urged by Broadhead. The Board has appealed and Broadhead has cross-appealed, 1 CA–CIV 8387.

After the trial court's order in Cause No. C–532594, and after Broadhead was not released from prison, he filed a petition for writ of habeas corpus against the defendant Department of Corrections, Maricopa County Superior Court Cause No. C–544292. Relief was denied. Broadhead appealed that judgment, 1 CA–CIV 8527.

The issue raised by the Board in CIV 8387 is whether due process requires that witnesses who testify at a preliminary hearing or at a parole revocation hearing must be placed under oath.

Broadhead raises two issues in his cross-appeal: (1) whether the Board violated his due process rights in improperly finding that he displayed recidivism; and (2) whether he was entitled to notice, as a procedural due process requirement, that upon revocation of parole he could "forfeit" the time

spent on parole. In his appeal from the denial of the writ of habeas corpus, Broadhead argues that the mere filing of an appeal by the Board in the earlier action did not operate as a stay to prevent his release from confinement after the trial court's order in Cause No. C–532594.

■ Review by special action of the parole board's decision is limited. We may determine whether a parolee has been denied due process in the revocation process. The trial court could not, and we cannot, substitute our view of the facts for that of the Board. *Cooper v. Arizona Board of Pardons and Paroles*, 149 Ariz. 182, 186, 717 P.2d 861, 865 (1986) (Feldman, J., concurring); *Sheppard v. Arizona Board of Pardons and Paroles*, 111 Ariz. 587, 536 P.2d 196 (1975). The trial court's ruling is reviewed in this court by ordinary appeal procedures. Rule 8(a), Rules of Procedure for Special Actions; 2 Arizona Appellate Handbook § 25.8 (1980). Also, we may review the Board's acts to determine whether they were authorized, if it appears the Board may have exceeded its legal authority. *See Worth v. Arizona Board of Pardons and Paroles*, 146 Ariz. 97, 703 P.2d 1246 (App.1985); *Cawley v. Arizona Board of Pardons and Paroles*, 145 Ariz. 387, 701 P.2d 1195 (App.1984), *approved and supplemented*, 145 Ariz. 380, 701 P.2d 1188 (1985).

## MORRISSEY v. BREWER

The landmark case in parole revocation is *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and it is fundamental to our analysis of issues in the instant matter.

*Morrissey v. Brewer* recognized that a parolee's liberty interest is entitled to the due process protections of the fourteenth amendment. The protection could be afforded by

an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.

*Id.*, 408 U.S. at 484, 92 S.Ct. at 2602.

■ The informal process should occur in two stages. The first stage is the arrest and preliminary hearing. The purpose of this hearing is to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.*, 408 U.S. at 485, 92 S.Ct. at 2602. An adequate hearing requires: proper notice of the hearing's purpose and place; notice of the alleged parole violations; an objective hearing officer; an opportunity for the parolee to appear and speak on his own behalf, and to bring in documents and witnesses relevant to the issue; a qualified right to confront and cross-examine informants who provided information adverse to the parolee; and, a written summary of the proceedings. *Id.*, 408 U.S. at 486–87, 92 S.Ct. at 2603. If reasonable grounds to believe a violation occured are found after a proper hearing, the parolee may be re-incarcerated pending the next stage, the revocation hearing. *Id.*, 408 U.S. at 487, 92 S.Ct. at 2603.

The elements of due process at the second stage, the revocation hearing, include:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing revocation); (e) a "neutral and detached" hearing body ...; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.*, 408 U.S. at 489, 92 S.Ct. at 2604. Although the due process requirements for both hearings are nearly identical, the purpose of the revocation hearing is different. The hearing body's goal there is to reach "a final evaluation of any contested relevant facts and consideration of whether the

facts as determined warrant revocation." *Id.*, 408 U.S. at 488, 92 S.Ct. at 2603.

## FAILURE TO SWEAR IN WITNESSES

The Board concedes that at the preliminary and final revocation hearings, the witnesses who testified were not placed under oath. The Board claims the trial court erred when it found a violation of due process because "requiring that witnesses be sworn is inconsistent with [the] informality and flexibility" needed in revocation proceedings. The Board also urges that there was no harm to Broadhead because his witnesses were also allowed to testify without taking an oath.

Broadhead argued to the trial court that refusal to swear witnesses violated his due process rights and violated A.R.S. § 41–1010(A). On appeal the thrust of his argument is that *Morrissey v. Brewer* requires a finding of parole violation to be based on "verified facts." 408 U.S. at 484, 92 S.Ct. at 2602. He interprets "verified facts" to mean facts adduced under oath, not "verified" in the sense that the facts are substantiated or confirmed.

■ The *Morrissey* opinion supports the latter meaning for the expression "verified facts." It points out that it is important not only for the Board to know about a violation, but also to learn accurately how many violations there were and how serious in order to decide what steps to take. 408 U.S. at 480, 92 S.Ct. at 2599. We conclude that procedural due process is satisfied by an accurate fact-finding procedure, which may not necessarily require sworn testimony. The admission of unsworn testimony is not by itself a constitutional defect. *State v. Doud*, 190 Or. 218, 225 P.2d 400 (1950) (inadvertent failure to swear in child witness was not error).

However, we find that in this case there is something more than the admission of unsworn testimony. The Administrative Procedure Act, A.R.S. §§ 41–1001 to 41–1015, applies to the Board of Pardons and Paroles. *Thomas v. Arizona State Board of Pardons and Paroles*, 115 Ariz. 128, 564 P.2d 79 (1977). A.R.S. § 41–1010(A)(4) de-

scribes the power a presiding hearing officer has:

A. Unless otherwise provided by law, in contested cases the following shall apply:

 * * * * * *

4. The officer presiding at the hearing may cause to be issued subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence and *shall have the power to administer oaths.* [Emphasis added.]

■ We have previously determined in this court that the inferences which can be drawn from statutes empowering an officer to administer oaths are not enough to support a conclusion that oaths *must* be administered. In *East Camelback Homeowners Association v. Arizona Foundation for Neurology and Psychiatry*, 18 Ariz.App. 121, 128, 500 P.2d 906, 913 (1972), we held that an officer is required to place witnesses under oath in an administrative proceeding only when the statute expressly so directs; if the statute does not do so, the administration of oaths and affirmations is in the officer's discretion. *Id.* The court in *East Camelback Homeowners Association* refused to invalidate zoning proceedings for a "technical failure" to swear in witnesses in spite of countervailing concerns: first, when the legislature grants the power to swear witnesses it should be used; second, the "regularity and solemnity of proceedings of administrative agencies would be greatly enhanced by requiring an oath or affirmation of all witnesses." *Id.*

■ In the instant matter we are faced, not with an oversight or mere technical omission, but with a deliberate refusal to swear in witnesses notwithstanding requests and objections from the parolee. We can perceive no justification for failing to place witnesses under oath, particularly when, as here, the parolee specifically requested the swearing in of witnesses. The Board has not explained how placing a witness under oath interferes with the per-

missible flexibility and informality of the revocation process. The taking of an oath "awaken[s] the conscience and impress[es] the mind" of the witness. A.R.S. § 12–2221 (oaths to be used in courts and civil proceedings). Moreover, a parolee is entitled, upon request, to have the witnesses that appear against him impressed with the perjury penalty which flows from giving testimony under oath. *Hecht v. Monaghan*, 307 N.Y. 461, 121 N.E.2d 421 (1954). Testimony from a witness in this state of mind can hardly be harmful to the interests of the state and the parolee in the revocation process.

Due process prohibits the state from acting arbitrarily in its proceedings. *Sulger v. Arizona Corporation Commission*, 5 Ariz.App. 69, 423 P.2d 145 (1967). A refusal to swear in witnesses under the circumstances of this case was an arbitrary and capricious action. A prime witness adverse to Broadhead was involved in the assault, so his truthfulness should have been encouraged to the fullest extent possible. We have earlier noted the role of an oath in a truth-seeking proceeding. More significantly, Broadhead brought the failure of the witnesses to be placed under oath to the attention of the Board. We conclude that Broadhead's procedural due process rights were violated by the refusal to administer oaths or affirmations to the witnesses. *See People v. Copeland*, 70 A.D.2d 884, 417 N.Y.S.2d 103 (1979).

The deprivation of due process requires a remand to the trial court with instructions to order a rehearing on the parole revocation before the Board. The trial court's judgment in Cause No. C–532594 is affirmed as modified. We believe it is unnecessary to hold a new preliminary hearing. Broadhead states in his brief that he admitted he stabbed the other man involved in the assault. Thus, cause to hold a revocation hearing was established by his own admission.

1. A.R.S. § 31–417, effective July 1, 1985 until July 1, 1988, is divided into two parts. Subsection (A) is merely a renumbering and retains the entire former statute. Subsection (B) is a

## FINDING REQUIRED TO REVOKE PAROLE

Broadhead's first argument in his cross-appeal concerns the finding the Board is required to make by statute to revoke parole. He contends that under A.R.S. § 31–415, the Board must find a recidivistic nexus linking a violation of parole with a lapse into criminal ways, and that the Board failed to do so in violation of his due process rights.

■ A.R.S. § 31–415 (1976 and Supp. 1985) (as amended 1979) reads:

**Violation of parole; warrant for retaking parolee**

If the parole clerk of the department of corrections or the director of the department of corrections, or the board of pardons and paroles or any member thereof, *has reasonable cause to believe that a paroled prisoner has violated his parole and has lapsed or is probably about to lapse into criminal ways or company*, then any of such persons may issue his warrant for retaking the prisoner at any time prior to expiration of the maximum sentence, which time shall be specified in the warrant. [Emphasis added.]

It is clear that reasonable cause for the issuance of a retaking warrant must be based on a two prong standard, a violation and a showing of criminal recidivism. We must point out that A.R.S. § 31–415 is *not* the statute pertaining to parole revocation. The statute authorizing revocation, A.R.S. § 31–417(A),[1] requires only a finding that the parolee is "delinquent":

If the paroled prisoner has been returned to the prison, he shall be given an opportunity to appear before the board, and the board may after opportunity has been given ... declare the parolee *delinquent.* [Emphasis added.]

A.R.S. § 31–417 is silent as to the meaning of "delinquent." Reading the statutes per-

newly added intensive supervision plan for parolees who commit non-criminal parole violations.

taining to the revocation process together, we conclude that "delinquent" in A.R.S. § 31–417 refers to the two prong standard of A.R.S. § 31–415.

■ The Board's letter notifying Broadhead of the revocation reveals the Board applied the proper standard. The conduct admitted by Broadhead, that he was involved in the assault and that he carried a knife, violated at least two terms of his parole. Standard condition number four provides in part that the parolee "will not engage in assaultive activities, violence, or threats of violence of any sort." Number five prohibits control, possession, transportation or use of deadly weapons. The Board apparently rejected Broadhead's claim of self defense and his conduct, without that defense, was criminal. Thus, the Board could find the requisite violation and conduct to revoke parole.

Contrary to Broadhead's assertion, there is no requirement that the violations be shown to lead to further crime. Even assuming such a nexus must be shown, the argument does not help Broadhead because his violations and criminal conduct were related.

### FORFEITURE OF STREET TIME

A.R.S. § 31–417(A) permits the Board to require a parole violator to serve the remainder of his sentence without credit for street time. Broadhead seeks a "voiding" of the street time revocation for violation of his due process rights in the Board's failure to provide him with notice that forfeiture of street time was a possible consequence of a finding of parole violation. He relies on *Vanes v. United States Parole Commission*, 741 F.2d 1197 (9th Cir.1984). *Vanes* supports Broadhead's position, and the Board's attorneys have failed to meaningfully distinguish that case. However, we disagree with the *Vanes* analysis of due process requirements.

Vanes was a parolee whose street time was revoked for parole violations. Vanes was not notified prior to the revocation hearing that forfeiture of street time was a possibility. The *Vanes* court held that no-

tice of the possible consequences of a violation finding was constitutionally required:

The Supreme Court has unequivocally stated that freedom on parole is a liberty interest which is protected by the requirements of due process. [Citing *Morrissey v. Brewer*.] If, as the Court has said, due process requires that a parolee receive written notice of the violation charges against him ..., we believe that due process also requires that a parolee be informed of the charges' possible consequences. This is particularly true where one of the potential consequences is the loss of "street time," which could double the amount of time a parolee spends on parole. Providing pre-hearing notice of this serves the same purpose as the notice of the charges—it affords the parolee the opportunity to attempt to prepare any defense or mitigation.

*Id.*, at 1202 (citations omitted). The *Vanes* court found that a federal statute pertaining to street time forfeiture, 18 U.S.C. § 4213(c) (1976) and a parole commission regulation, reflected the constitutional notice requirement by providing that a warrant or summons to retake a parolee must provide notice of the possible consequences of a finding of violation.

We believe the *Vanes* court reads more into *Morrissey v. Brewer* than is there. *Morrissey* focuses on an accurate fact-finding procedure to fulfill due process requirements. The purpose of the revocation hearing is to provide "an opportunity to be heard and to show, if [the parolee] can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.*, 408 U.S. at 488, 92 S.Ct. at 2603. Nowhere does *Morrissey* refer to required notice of the possible penalty for violation, even though the Court recognized that "[i]f a parolee is returned to prison, he usually receives no credit for the time 'served' on parole. Thus the returnee may face a potential of substantial imprisonment." *Id.*, 408 U.S. at 480, 92 S.Ct. at 2600 (footnote omitted).

An argument similar to Broadhead's regarding notice has been made concerning informations and indictments. In *State v. Richmond*, 136 Ariz. 312, 666 P.2d 57 (1983), *cert. denied.* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983), a defendant complained that the information charging him with first degree murder was insufficient, depriving him of his sixth amendment right to know the nature and cause of the charges. The Arizona Supreme Court held that due process only required that the defendant be notified of the charges against him; it did not require notice of the possible sentence for the crime or of the aggravating factors which could be presented at the sentencing hearing. Similarly, *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694 (1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), held that an indictment for first degree murder which failed to charge a defendant under special death penalty provisions did not violate due process. If the right to be told of the possible sentencing consequences is not part of a criminal prosecution, it is also not a right of a parole revocation proceeding where, according to *Morrissey v. Brewer*, 408 U.S. at 480, 92 S.Ct. at 2600 the liberty interest is less.

*Vanes* noted that notice of possible consequences served the same purpose as providing notice of the charges: affording an opportunity for the parolee to prepare a defense or present evidence in mitigation. If there is no further purpose to be served by requiring notice of the possible consequences, we do not see how a wrong rising to the level of a due process violation has occurred. *See Gandy v. Keohane*, 617 F.Supp. 25 (D.C.Tenn.1985) ("Any defense or mitigation argument available to Mr. Gandy to prevent revocation of his parole was identical to that required to prevent forfeiture of time spent on parole." *Id.*, at 28).

■ Broadhead was given sufficient notice of the alleged violations against him. Due process does not mandate that Broadhead be given notice of the possible loss of street time.

■ A problem does remain with the street time forfeiture. In *Worth v. Board of Pardons and Paroles*, this court discussed the Board's power over crediting a retaken parolee for street time pursuant to A.R.S. § 31–417. Under § 31–417, after a revocation hearing and finding of delinquency, a parolee "may be thereafter imprisoned in the prison for a period equal to his unexpired maximum term of sentence at the time parole was granted, unless sooner released or discharged." The Board, according to *Worth*, cannot have a parolee "forfeit" street time or credit for time served pursuant to a retaking for parole violation; it has discretion regarding credit for street time. The forfeiture of street time was an unauthorized act by the Board. That part of the regulation permitting "forfeiture of street time," A.C.R.R. R5–4–503(G), is invalid. *See Cawley v. Arizona Board of Pardons and Paroles*. If, upon remand the Board again decides revocation is proper, it must decide whether Broadhead should have credit for his street time. Broadhead's requested remedy, that we restore his street time, is not the appropriate remedy.

### RULE 62(g) STAY OF JUDGMENT

Rule 62(g), Arizona Rules of Civil Procedure, provides that "[w]hen an appeal is taken by the state or an officer or agency thereof ... and the operation or enforcement of the judgment is stayed, no bond, obligation, or other security shall be required from the appellant." The Board, an appellant qualified under the rule, filed a notice of appeal from the trial court's ruling in Cause No. C–532594, the revocation matter. Relying on rule 62(g), the Board did not file any bond to stay the execution of judgment pending appeal. Broadhead then brought suit for a writ of habeas corpus grounded upon the alleged failure of the Board to perfect a stay of the operation of judgment. The trial court denied the requested relief, leaving Broadhead imprisoned during the appeal.

■ The cases are uniform that under rule 62(g), a timely notice of appeal

filed by the state or its agency operates as an automatic stay of execution of judgment. *Navajo County v. Superior Court,* 105 Ariz. 156, 461 P.2d 77 (1969) (stay of judgment ordering tax refunds and requiring that tax rolls be corrected) *supplemented* 105 Ariz. 248, 462 P.2d 797 (1969); *Maricopa County v. Maricopa County Superior Court,* 15 Ariz.App. 149, 486 P.2d 829 (1971) (stay of enforcement of summary judgment); *Town of Gila Bend v. Hughes,* 13 Ariz.App. 447, 477 P.2d 566 (1970) (stay of judgment for money damages and specific performance). The Board filed a timely notice of appeal. Thus, it was not required to do anything more to obtain a stay. The trial court in Cause No. C–544292 correctly denied Broadhead relief in the writ of habeas corpus.

The trial court's determination that Broadhead's due process rights were violated by the failure to place witnesses under oath is affirmed as modified. The matter is remanded to the trial court with instructions to order rehearing by the Board, in a manner consistent with this opinion.

JACOBSON and SHELLEY, JJ., concur.