George **PISANO**, Appellant (Petitioner),

v.

Duane **SHILLINGER**, Appellee (Respondent).

No. 91–138.

Supreme Court of Wyoming.

July 27, 1992.

Leonard D. Munker, State Public Defender, and Deborah A. Baumer, Appellate Counsel, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT* and GOLDEN, JJ.

MACY, Chief Justice.

The Wyoming Board of Parole (Board) voted to revoke Appellant George Pisano's parole after determining that he had violated several parole conditions. Appellant petitioned the district court for a review of the Board's decision pursuant to the Wyoming Administrative Procedure Act (WAPA) and W.R.A.P. 12. The district court dismissed Appellant's petition for review, holding that the legislature specifically precluded parole revocation hearings from the WAPA's general grant of judicial review of administrative decisions.

We reverse and remand.

Appellant raises the following issues on appeal:

ISSUE I

Was Appellant denied his constitutional right to procedural due process when the district court ruled that he had no right to judicial review of his parole revocation?

ISSUE II

Was improper evidence used to revoke Appellant's parole?

Appellee Duane Shillinger states the issues as:

I. Whether there exists a right to judicial review of a parole revocation decision of the Wyoming Board of Parole.

II. Whether the decision of the Wyoming Board of Parole was appropriate: Whether it was supported by substantial evidence, was either arbitrary, capricious or an abuse of discretion, or was otherwise in accordance with law.

* Chief Justice at time of oral argument.

In 1983, Appellant was convicted of voluntary manslaughter in violation of Wyo. Stat. § 6–4–107 (1977) (currently Wyo.Stat. § 6–2–105 (1988)) and sentenced to serve not less than seven years nor more than fifteen years in the Wyoming State Penitentiary. Appellant was paroled from the penitentiary in September 1988, subject to certain conditions. Starting in June 1989 and continuing through the fall of 1990, Appellant engaged in a series of activities which ultimately caused his parole officer to file a petition for a preliminary hearing to determine probable cause and reasonable grounds of violations of Appellant's parole. The incidents which allegedly violated Appellant's parole conditions included consumption of intoxicating beverages, entering a place where intoxicating beverages were sold, vandalism, larceny, leaving the state of Wyoming without permission, and failure to participate in substance abuse and mental health counseling.

After holding a hearing on December 5, 1990, the Department of Probation and Parole found probable cause existed to support eight of the eleven alleged parole violations and recommended that Appellant be returned before the Board for a further hearing and disposition of the matter. Pending his final revocation hearing, Appellant filed a motion to have bail set and an emergency petition for a writ of habeas corpus. In *Pisano v. Shillinger*, 814 P.2d 274 (Wyo.1991), this Court denied Appellant's motion and emergency petition, holding that Appellant had no right to be admitted to bail pending revocation of his parole. After his final revocation hearing on January 8, 1991, the Board concluded that Appellant's parole should be revoked.

On January 25, 1991, Appellant filed a petition with the district court pursuant to Wyo.Stat. § 16–3–114 (1990) and W.R.A.P. 12, seeking judicial review of the Board's decision to revoke his parole. In his petition, Appellant claimed that, at the parole revocation hearing, the Board improperly received several exhibits into evidence and admitted evidence concerning Appellant's mental health counseling without proof of

a sufficient waiver of confidentiality. The district court dismissed Appellant's petition, holding that Wyo.Stat. § 7–13–402(f) (Supp.1991) expressed the legislature's intent to preclude judicial review of the Board's hearings. Appellant filed a timely notice of appeal.

█ It is helpful to initially identify the precise issue raised by Appellant. The narrow question presented to the district court, and currently before this Court, was whether the legislature intended to preclude parole revocation proceedings from the WAPA's general grant of judicial review. Only if we first determine that the legislature did intend to preclude judicial review of parole revocation hearings must we then consider the constitutional issue of whether a parolee's constitutional due process rights mandate judicial review by appeal or by some other mechanism; e.g., a writ of habeas corpus.[1] This approach is consistent with the well established rule that we will not discuss constitutional questions if another appropriate ground exists for resolving the issue. *Wheeler v. Parker Drilling Company*, 803 P.2d 1379, 1383 n. 1 (Wyo.1991).

We have recognized that the right to judicial review of an administrative decision is entirely statutory. *Sellers v. Employment Security Commission of Wyoming*, 760 P.2d 394, 395 (Wyo.1988); *Holding's Little America v. Board of County Commissioners of Laramie County*, 670 P.2d 699, 702 (Wyo.1983), *after remand*, 712 P.2d 331 (Wyo.1985). In this case, the legislature has not provided a specific statute which authorizes judicial review of parole revocation decisions. Therefore, the applicable statute is § 16–3–114(a) which establishes, in general, the right to have review of final agency decisions. Section 16–3–114(a) provides in pertinent part:

(a) Subject to the requirement that administrative remedies be exhausted and *in the absence of any statutory or common-law provision precluding or limiting judicial review*, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken....

(Emphasis added.) In his brief, Appellee does not contest the fact that the Board is an agency[2] or that a parole revocation proceeding constitutes a contested case.[3] *See Frazee v. Iowa Board of Parole*, 248 N.W.2d 80 (Iowa 1976) (interpreting parole revocation proceeding as being a contested case under Iowa Administrative Procedure Act's definition, which is identical to the contested case definition in the WAPA); and *Airhart v. Iowa Department of Social Services*, 248 N.W.2d 83 (Iowa 1976). Rather, Appellee contends that judicial review pursuant to § 16–3–114(a) is specifically precluded by § 7–13–402(f), which provides:

(f) The promulgation of substantive rules by the board and the *conduct of its hearings* are specifically exempt from all provisions of the Wyoming Administrative Procedure Act except the rules and regulations shall be filed in the office of the secretary of state.

(Emphasis added.)

█ We have adopted the view that when we are analyzing the availability of judicial review of administrative decisions the interests of Wyoming are best served

---

**1.** As a result of the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), no doubt exists that a parolee's conditional liberty is subject to certain due process protections. *See Mason v. State*, 631 P.2d 1051, 1055 (Wyo.1981), and Wyo.Stat. § 7–13–408 (1987).

**2.** "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the governing body of a city or town, the state legislature and the judiciary[.] Wyo.Stat. § 16–3–101(b)(i) (1990).

**3.** "Contested case" means a proceeding including but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing[.] Wyo.Stat. § 16–3–101(b)(ii) (1990).

by a policy which leads to reviewability in most instances. *Holding's Little America,* 670 P.2d at 702; *Keslar v. Police Civil Service Commission, City of Rock Springs,* 665 P.2d 937, 942 (Wyo.1983). Consistent with this "presumption of reviewability" is the concept that the right to review is not precluded unless legislative intent to preclude judicial review is clear and convincing. *Holding's Little America,* 670 P.2d at 702. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); and *Rusk v. Cort,* 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962). While courts frequently cite this test, what constitutes clear and convincing evidence of legislative intent to preclude judicial review is not always apparent. In *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), the Supreme Court described clear and convincing evidence as not being a rigid evidentiary test but as being a useful reminder to courts that, where substantial doubt about legislative intent exists, the general presumption favoring judicial review of administrative action is controlling. 467 U.S. at 351, 104 S.Ct. at 2456. The Supreme Court explained: "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." 467 U.S. at 345, 104 S.Ct. at 2453. *See also Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

Unfortunately, our examination of whether the legislature intended to preclude judicial review in § 7–13–402(f) is necessarily less informed than federal statutory analysis due to a lack of available legislative history in Wyoming. Nevertheless, the statutory language itself provides valuable insight into legislative intent. In this case, Appellee asserts that the language of § 7–13–402(f) evidences the requisite legislative intent to preclude review. Appellee argues that, since "the conduct of its hearings are ... exempt from all provisions of the Wyoming Administrative Procedure Act," parole revocation decisions must be exempt from judicial review. Essentially, Appellee's contention is that the legislature could not have intended to allow review of the Board's decisions if the manner in which those decisions are made does not have to comply with the WAPA's procedural requirements. The court below agreed with Appellee's interpretation, concluding in its decision letter that:

An examination, ... of [Appellant's] Petition for Review, specifically sets forth objection to exhibits and evidence received by the Board of Probation and Parole at the parole revocation hearing. The court is unable to separate the exclusion of Board conduct at its hearings from the right of judicial review when the Petition for Review seeks reversal of Board action based upon its conduct at the hearing.

■ Appellee's interpretation of the statute has merit when a parolee objects to the conduct of the Board's hearing; however, his interpretation fails to distinguish between review of the Board's hearing procedures and review of the Board's decision. Section 7–13–402(f) allows the Board to conduct hearings using procedures which are not consistent with the contested case provisions of the WAPA, assuming, of course, that the Board's procedures have no constitutional impediments. This freedom to conduct hearings in a manner other than that prescribed by the WAPA does not preclude judicial review of the ultimate decision. In our view, the Board's right to adopt its own procedures simply means that, barring any constitutional limitations, a parolee cannot seek judicial review of the Board's decision upon grounds relating to the conduct of the Board's hearings. However, the fact that the conduct of the hearing is not subject to review does not mean that the decision itself is not subject to review. The conduct of a hearing merely provides the procedural process through which a decision is reached. The Board's final decision is still reviewable by the district court pursuant to § 16–3–114(c), which requires, among other things, that the Board's findings be supported by substan-

tial evidence and that its actions not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, we hold that the exemption of the Board's hearing procedures from the WAPA does not evidence an intent to preclude judicial review of the Board's revocation decisions.

■■■ Our examination of § 7–13–402(f)'s language does not end with our conclusion that the legislature did not intend to preclude judicial review when it exempted the Board's hearing procedures from the WAPA. We must still consider the significance, if any, of the legislature's silence regarding judicial review in § 7–13–402(f). In *United States Steel Corporation v. Wyoming Environmental Quality Council*, 575 P.2d 749 (Wyo.1978), we said that the legislative intent to restrict review must be specifically manifested and that a persuasive reason must exist to believe that restriction was the legislature's purpose. 575 P.2d at 750. It naturally follows that, if we require clear evidence of legislative intent to restrict review, " '[t]he mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.' " *Keslar*, 665 P.2d at 942 (quoting *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970)). Statutory silence regarding judicial review constitutes neither a persuasive reason nor a manifestation of legislative intent to prohibit review. Consequently, we do not interpret § 7–13–402(f)'s silence on judicial review as being an indication of legislative intent to preclude review.

■ As the Supreme Court pointed out in *Block*, evidence of the legislature's intent to preclude judicial review may manifest itself not only in the statutory language but also in the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. None of these other factors indicate that the legislature intended to preclude judicial review of parole revocation proceedings. The structure of the statutory scheme gives no indication

that the legislature meant to preclude judicial review. *Cf. Block*, 467 U.S. 340, 104 S.Ct. at 2451 (in complex and detailed statute, omission of provision of judicial review is sufficient reason to find congressional intent to preclude review). Nor can we discern how judicial review would frustrate the objectives of the statute or how review would be inconsistent with the nature of the parole revocation process.

Our determination that the WAPA affords Appellant a right to judicial review makes it unnecessary for us to consider whether Appellant's due process rights in a parole revocation proceeding mandate judicial review by appeal. We also do not need to consider Appellant's second issue, which is whether improper evidence was used to revoke his parole. The merits of Appellant's claim are not properly before this Court. Because the district court concluded that it had no jurisdiction to review the Board's decision, our task is merely to address the question of jurisdiction, not to decide the merits of this proceeding. *See Keslar*, 665 P.2d 937.

Reversed and remanded for further proceedings.

URBIGKIT, J., files a specially concurring opinion.

URBIGKIT, Justice, specially concurring.

I completely concur with the majority and additionally write to recognize the fundamental principle that access to judicial review upon parole revocation—like probation termination—is constitutionally required.

Intrinsic to any constitutional review for parole revocation is a first responsibility to apply the foundational decisions of the United States Supreme Court interpreting the federal constitution. Wyoming judicial obligation then requires this court to accord legal attention to the structure of this state by application of judicial review under the Wyoming Constitution. In both analyses, effectuation of judicial review of parole revocation achieves a definitive constitutional dimension under the Wyoming

Constitution as well as under our nation's constitution.

Both the similarity of parole and probation revocation and the attendant due process constitutional implementation were decisively and dispositively determined in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The third United States Supreme Court case cited by appellant, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), provides additional strength to a constitutional due process involvement in processes and procedures which follow criminal conviction.

On the particular subject now addressed, some right to judicial review is self-evident since it generally occurs. Technically, due process cannot be a reality and justice cannot be enforced unless the firm and unswerving hand of judicial review is available. Otherwise, within a federalized system of dual judicial systems, the "due" part is left in state hands and the "process" is encumbered by federal adjudication. Wyo.Const. art. 1, § 6 does not either limit or permit a division of that unalienable right into an unenforced assertion.

Unquestionably, due process, upon either parole or probation revocation, is a constitutional interest guaranteed by the United States Constitution and enforced upon state processes by the Fourteenth Amendment. It is hard to believe that anyone—no matter how federalistic-directed or authoritarian-inclined to reject due process, described to be coddling criminals—could misunderstand.

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

*Morrissey*, 408 U.S. at 482, 92 S.Ct. at 2601.

> Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty.

*Scarpelli*, 411 U.S. at 782, 93 S.Ct. at 1759 (footnote omitted). In footnote, the author of the opinion added:

> Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole.

> It is clear at least after *Morrissey v. Brewer*, 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972), that a probationer can no longer be denied due process * * *.

*Scarpelli*, 411 U.S. at 782 nn. 3 and 4, 93 S.Ct. at 1759–60 nn. 3 and 4.

Justice White adds in substantive thought in addressing the even broader subject of due process following conviction:

> Petitioners assert that the procedure for disciplining prison inmates for serious misconduct is a matter of policy raising no constitutional issue. If the position implies that prisoners in state institutions are wholly without the protections of the Constitution and the Due Process Clause, it is plainly untenable. Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 [68 S.Ct. 1049, 1060, 92 L.Ed. 1356] (1948). But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this coun-

try. Prisoners have been held to enjoy substantial religious freedom under the First and Fourteenth Amendments. * * * They retain right of access to the courts. * * * Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. * * * Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.

*McDonnell,* 418 U.S. at 555–56, 94 S.Ct. at 2974–75.

The more efficacious yet righteously pervasive concern is availability for judicial review and appeal under the protective umbrella of the Wyoming Constitution from adverse decision, when liberty interests within criminal processes are affected. This is the dual subject of constitutional right of review and of appeal within the Wyoming Constitution. The long discarded historical notion that appeals are available only by legislative grace and not constitutional understanding has consistently been rejected by the most thoughtful scholars of the law today and, certainly, consistently by this writer. *Roach v. State,* 801 P.2d 1037 (Wyo.1990); *Swazo v. State,* 800 P.2d 1152 (Wyo.1990); *Stogner v. State,* 792 P.2d 1358, 1368 (Wyo.1990), Urbigkit, J., specially concurring; *Smizer v. State,* 763 P.2d 1254 (Wyo.1988). *See also Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Although once opined as not necessarily constitutional, every state now has an appeal process from a criminal conviction and that opportunity has been intrinsic in Wyoming law since the earliest stages of territorial government. *See* 1876 Compiled Laws of Wyoming ch. 14, Code of Criminal Procedure, at 138 (approved December 10, 1869).

This present case reaches appeal by automatic review since no judicial review was provided by the district court from the action of the parole board. Undoubtedly, any decision of the district court acting as the initial tribunal of decision is subject to the appellate jurisdiction of Wyo.Const. art. 5.

### How judicial power vested.

The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts, and such subordinate courts as the legislature may, by general law, establish and ordain from time to time.
Wyo.Const. art. 5, § 1.

### Supreme court generally; appellate jurisdiction.

The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes * * *.
Wyo.Const. art. 5, § 2.

### Supreme court generally; original jurisdiction.

The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself or before the supreme court, or before any district court of the state or any judge thereof.
Wyo.Const. art. 5, § 3.

This court then, in contemplation of this judicial review, is required to enforce its responsibilities provided in Wyo. Const. art. 2, § 1:

### Powers of government divided into three departments.

The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of

the others, except as in this constitution expressly directed or permitted.

The framers of the Wyoming Constitution, in seeking to protect the state's citizens consistently and insistently, then included the state's Bill of Rights:

**Due process of law.**

No person shall be deprived of life, liberty or property without due process of law.

Wyo.Const. art. 1, § 6.

**Courts open to all; suits against state.**

All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct.

Wyo.Const. art. 1, § 8.

**Habeas corpus.**

The privilege of the writ of habeas corpus shall not be suspended unless, when in case of rebellion or invasion the public safety may require it.

Wyo.Const. art. 1, § 17.

Furthermore, maybe sometimes—sometimes maybe—exceptions written into these definitive Wyoming constitutional standards would, for example, justify review on appeal in a civil case and deny similar access within the Wyoming criminal justice structure. That conclusion does not seem to me to be acceptable and, certainly, would not provide either equal protection or due process to the criminally charged defendant. *Riggins v. Nevada*, — U.S. —, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

This court, although the important review issue is totally now of first decision, has in the past recognized due process in probation and parole decisions and processes. *Pena v. State*, 792 P.2d 1352 (Wyo. 1990); *Mason v. State*, 631 P.2d 1051 (Wyo. 1981). The identical due process concerns exist for both probation and parole which

otherwise could, of course, raise the equal protection inquiry of Wyo.Const. art. 1, § 2; art, 1, § 7; and art. 1, § 34. This consideration is significant since a right to judicial review and subsequent appeal is ingrained and enforced within the probation revocation process as defined in present text by W.R.Cr.P. 39. *Accord Wlodarczyk v. State*, — P.2d — (Wyo. 1992) (No. 91–20, decided 6/24/92); *Swackhammer v. State*, 808 P.2d 219 (Wyo.1991); *Ketcham v. State*, 618 P.2d 1356 (Wyo. 1980); *Weisser v. State*, 600 P.2d 1320 (Wyo.1979); and *Knobel v. State*, 576 P.2d 941 (Wyo.1978).

The right of judicial review is, of course, clearly provided in the federal criminal justice system. *Whitehead v. United States Parole Com'n*, 755 F.2d 1536 (11th Cir. 1985); *Santillanes v. United States Parole Com'n*, 754 F.2d 887 (10th Cir.1985); *Taylor v. United States Parole Com'n*, 734 F.2d 1152 (6th Cir.1984); *Nunez–Guardado v. Hadden*, 722 F.2d 618 (10th Cir. 1983).

Generally recognizing the due process essential in revocation cases, a broad array of authorities from the state court systems are similarly informative. One of the more explicit cases provided by the Florida Supreme Court is *Roberson v. Florida Parole & Probation Com'n*, 444 So.2d 917, 920–21 (Fla.1983) (emphasis added):

We agree with the district court's analysis of the application of the review power to agency action, and its entire interpretation of parties and proceedings subject to review. We adopt in full its logical rationale (*Daniels [v. Florida Parole & Probation Com'n]*, 401 So.2d [1351] at 1352–57 [ (Fla.1981) ]).

Looking beyond our own jurisdiction, we find that appellate review of parole decisions is nothing new or radical. *See Foggy v. Arizona Board of Pardons & Paroles*, 108 Ariz. 470, 501 P.2d 942 (1972); *Willard v. Ferguson*, 358 S.W.2d 516 (Ky.1962); *Mastriana v. New Jersey Parole Board*, 95 N.J.Super. 351, 231 A.2d 236 (1967).

We return to the wisdom of *Moore [v. Florida Parole & Probation Com'n*, 289

So.2d 719 (Fla.), *cert. denied* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974)] wherein we said, "[w]hile there is no absolute right to parole, there is a right to a proper consideration for parole," 289 So.2d at 720, because:

> "[a] prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime. No iron curtain is drawn between the Constitution and the inmates of prisons in this country. Consideration for parole is an aspect of liberty to which at least minimal due process must extend.... It has been said, government action must not only be fair, it must appear to be fair. We agree that, 'one of the best procedural protections against arbitrary exercise of discretionary power lies in the requirement of findings and reasons that appear to *reviewing judges* to be rational.'"

*Phillips v. Williams*, 583 P.2d 488, 490 (Okl.1978), *vacated* 442 U.S. 926, 99 S.Ct. 2853, 61 L.Ed.2d 294 (1979) (quoting *Monks v. New Jersey State Parole Board*, 58 N.J. 238, 245, 277 A.2d 193, 196 (1971)) (footnotes omitted) (original emphasis deleted; emphasis supplied). The only way to assure a proper respect for the rights of prisoners is to insure judicial review. *See, e.g., Oishi v. Florida Parole and Probation Commission*, 418 So.2d 329 (Fla. 1st DCA1982).

> *There should be no room for a "shadow government" in a government in the sunshine.*

The Pennsylvania Supreme Court recognized the constitutionally guaranteed appeal from the action (of the Board of Probation and Parole) in *Bronson v. Com. Bd. of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied* 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981). The differential between parole release and parole revocation in application of due process was recognized by the Indiana Supreme Court in *Murphy v. Indiana Parole Bd.*, 272 Ind. 200, 397 N.E.2d 259 (1979). The Indiana court explicitly distinguished *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) from *Morrissey*, 408 U.S. 471, 92 S.Ct. at 2595. Cases similarly recognizing the right for judicial review of the revocation of parole are *People v. White*, 804 P.2d 247 (Colo. App.1990); *Turman v. Buckallew*, 784 P.2d 774 (Colo.1989); *In re Question Concerning State Judicial Review of Parole Denial*, 199 Colo. 463, 610 P.2d 1340 (1980); and *Harris v. Board of Parole*, 288 Or. 495, 605 P.2d 1181 (1980).

A considerable list of law journal articles relating to the subject as well as a very extended, for 1974, comment is found in Donald T. Kramer, Annotation, *Comment Note.—Procedural Requirements, Under the Federal Constitution, Applicable to Revocation of Probation or Parole*, 36 L.Ed.2d 1077 (1974). Similarly, see Wade R. Habeeb, Annotation, *Right to Assistance of Counsel at Proceedings to Revoke Probation*, 44 A.L.R.3d 306 (1972).

Judicial review of decisions of a parole board can be found in a wide array of cases. A reasonably recent sample would include: *Avery v. State*, 616 P.2d 872, 874 (Alaska 1980) (recognizing there is no difference between parole and probation revocation as regard to due process requirements); *Broadhead v. Arizona Bd. of Pardons and Paroles*, 151 Ariz. 37, 725 P.2d 744 (1986), *superseded on a separate issue sub nom. Kelley v. Arizona Dept. of Corrections*, 154 Ariz. 476, 744 P.2d 3 (1987); *Mellinger v. Idaho Dept. of Corrections*, 114 Idaho 494, 757 P.2d 1213 (1988); *Parker v. State*, 247 Kan. 214, 795 P.2d 68 (1990); *Owens v. Risley*, 217 Mont. 35, 702 P.2d 1 (1985); and *Biondo v. New York State Bd. of Parole*, 60 N.Y.2d 832, 470 N.Y.S.2d 130, 458 N.E.2d 371 (1983).

It is apparent that the normal course of review from decisions of the parole board in some jurisdictions is accomplished by the writ of habeas corpus. *Broadhead*, 725 P.2d 744 and *Risley*, 702 P.2d 1 serve as examples for this method of review. *See also State ex rel. Neal v. Karl*, 627 S.W.2d 913, 915 (Mo.App.1982), which recognized the grant of "the writ of habeas corpus because the mandated due process requirements for parole revocation proceedings had not been met." Cases with a due

process examination would include: *Reiter v. Camp*, 518 S.W.2d 82 (Mo.App.1974) and *Moore v. Stamps*, 507 S.W.2d 939 (Mo.App. 1974). "[A] revocation of probation represents a 'grievous loss' and deprivation of liberty, substantial procedural safeguards must be measured by those protections vouchsafed by the Fourteenth Amendment." *Reiter*, 518 S.W.2d at 87.

In concurring with the majority opinion, I also premise the decision on the constitutional right of judicial review required to secure enforcement of the due process interest guaranteed to each individual in Wyoming by Wyo.Const. art. 1, § 6.