BURKE, Chief Justice, dissenting.
[¶66] I respectfully dissent. Our precedent establishes a very high bar that must be cleared to sustain a facial challenge to the constitutionality of a statute. The majority has failed to hold Appellant to that high standard and Appellant has not satisfied it. I would affirm the decision of the district court denying Appellant's constitutional challenge.
[¶67] I agree that Article 3, Section 31 of the Wyoming Constitution requires that the treasurer be provided the opportunity to approve contracts pertaining to the repairing and furnishing of the halls and rooms used for the meeting of the legislature and that some of the contracts executed in furtherance of the capitol restoration project may fit within the purview of Article 3, Section 31.[16] I also agree that the Capitol Repair Legislation does not explicitly require the treasurer approval mandated by Article 3, Section 31. In light of the absence of such a provision, I would also concede that the majority's interpretation of the legislation is plausible. However, that is not a sufficient basis for upholding a facial challenge. Our precedent requires more. We must presume that the challenged statute is constitutional. Dir. of the Office of State Lands & Invs. v. Merbanco, Inc. , 2003 WY 73, ¶ 32, 70 P.3d 241, 252 (Wyo. 2003). We cannot find constitutional conflict unless the conclusion is "unavoidable" and "beyond reasonable doubt." Id. We must "resolve all doubts in favor of constitutionality." Id.
[¶68] We summed up the standard we must apply in resolving a facial challenge this way:
*1112 Critical to the resolution of this case is the fundamental maxim followed consistently by this Court since statehood that every statute is presumed constitutional and not to be held in conflict with the constitution unless such conclusion is clear, palpable, unavoidable, and beyond reasonable doubt. Painter v. Abels , 998 P.2d 931 (Wyo. 2000) ; Wyoming Coalition v. Wyoming Game & Fish Commission , 875 P.2d 729 (Wyo. 1994) ; Thomson v. Wyoming In-Stream Flow Committee , 651 P.2d 778 (Wyo. 1982) ; Uhls v. State ex rel. City of Cheyenne , 429 P.2d 74 (Wyo. 1967) ; Taxpayers' League of Carbon County, Wyo. v. McPherson , 49 Wyo. 251, 54 P.2d 897 (1936) ; State v. Sureties of Krohne , 4 Wyo. 347, 34 P. 3 (1893). A person challenging the constitutionality of a statute bears a heavy burden of proving such beyond any reasonable doubt. Board of County Commissioners v. Geringer , 941 P.2d 742 (Wyo. 1997) ; V-1 Oil Company v. State , 934 P.2d 740 (Wyo. 1997) ; NJC v. State , 913 P.2d 435 (Wyo. 1996). In fact, we are duty bound to uphold statutes where possible and resolve all doubts in favor of constitutionality. Campbell v. State , 999 P.2d 649 (Wyo. 2000) ; Frantz v. Campbell County Memorial Hospital , 932 P.2d 750 (Wyo. 1997). The challengers present a facial challenge, which is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno , 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
Merbanco , ¶ 32, 70 P.3d at 252. The majority has failed to apply those standards in reaching the conclusion that the legislation is facially unconstitutional.
[¶69] The majority relies, in large measure, upon our decision in Powers to reach the conclusion that "[t]he legislation ... violates Article 3, § 31 of the constitution and is unconstitutional on its face." The reliance on Powers is misplaced. Powers is readily distinguishable and exemplifies a proper facial challenge. The statutory language at issue in Powers left no room for doubt.
[¶70] In Powers , the title of the legislation explicitly stated that it was an act "transferring specified duties from the state superintendent to the director of the state department of education." Id ., ¶ 3, 318 P.3d at 302. The legislation transferred "nearly all of the duties that were formerly the responsibility of the Superintendent" to the newly-created director. Id. , ¶ 4, 318 P.3d at 302. It explicitly substituted the " 'director' for 'state superintendent' in approximately 100 places." Id. There is no similar "transfer" language in the title or anywhere else in the legislation that is challenged in this case.
[¶71] The 2014 legislation quoted in the majority opinion does not even mention the treasurer. The legislative "silence" is significant. Our decision in Pisano , 835 P.2d 1136, illustrates how statutory "silence" in challenged legislation should be construed in determining legislative intent. The majority attempts to distinguish Pisano but does so without applying the presumption of constitutionality mandated by our precedent.
[¶72] In Pisano , we were called upon to determine whether the legislation at issue precluded judicial review of a parole revocation decision. We began by noting that our analysis must be conducted with a "presumption of reviewability." Id. , 835 P.2d at 1139. "Consistent with this 'presumption of reviewability' is the concept that the right to review is not precluded unless legislative intent to preclude judicial review is clear and convincing." Id.
[¶73] In determining whether the "clear and convincing" standard was satisfied, we held that "where substantial doubt about legislative intent exists, the general presumption favoring judicial review of administrative action is controlling." Id. We also specifically addressed "statutory silence" and said,
It naturally follows that, if we require clear evidence of legislative intent to restrict review, " '[t]he mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.' " ... Statutory silence regarding judicial review constitutes neither a persuasive reason nor a manifestation of legislative intent to prohibit review. Consequently, we do not interpret § 7-13-402(f)'s *1113 silence on judicial review as being an indication of legislative intent to preclude review.
Id. , 835 P.2d at 1140. In Pisano , the "presumption of reviewability" drove our analysis. Similarly, in this case, the presumption of constitutionality should drive the analysis. The majority does not apply that presumption. In the absence of a specific statutory provision transferring constitutional authority from the treasurer to others, the statute should be presumed constitutional. There is no specific provision in the challenged legislation and the majority has not identified any specific provision transferring that authority.
[¶74] The majority points to the 2017 legislative amendment in an attempt to bolster its conclusion that "the exemption of the treasurer's contract approval authority from the capitol restoration legislation evidences an intent to preclude it." According to the majority, "if there were any doubt as to the legislature's intent under the original capitol improvements legislation, the 2017 amendments removed it." I disagree. The 2017 amendment had nothing to do with the treasurer's constitutional approval authority.
[¶75] In the 2017 amendment, the legislature opted to add the treasurer as a member of the capitol restoration oversight group. Wyo. Stat. Ann. § 9-5-111(a)(v). Again, eschewing any attempt to apply the presumption of constitutionality, the majority concludes, "[T]he clear impact of the amendment was to allow the treasurer a vote, but to deprive him of the right to approve repairs and furnishings to the halls and rooms of the legislature." In reaching that conclusion, the majority improperly blurs the distinction between the treasurer's constitutional approval authority under Article 3, Section 31 and the statutory approval authority provided in the challenged legislation.
[¶76] The 2017 amendment did not diminish the treasurer's constitutional authority. It made no mention of that authority. That authority remains intact. Instead, the amendment increased the treasurer's ability to have input on the project. As a member of the capitol restoration oversight group, the treasurer now has a voice and a vote on nearly every aspect of the entire project. This is a far cry from the treasurer's very limited approval authority set forth in Article 3, Section 31.[17]
[¶77] Long ago, in State ex rel. State Publishing Co. v. Smith , 23 Mont. 44, 57 P. 449 (1899), the Montana Supreme Court recognized the distinction between constitutional approval authority and statutory approval authority and had no difficulty concluding that the presence of statutory approval authority does not negate the continued viability of constitutional approval authority. Addressing a claim involving application of a provision of the Montana Constitution that was nearly identical to the language in Article 3, Section 31, the Court said:
It may be unfortunate that the governor was made a member of this board whose duty it is to let these contracts. It puts him in a position where he can refuse to approve the action of a majority of the board of which he is a member, and thus put his veto upon proceedings in which he takes part. Nevertheless his duty as a member of this board in relation to these contracts is statutory, while his duty in approving or disapproving the action of the board is constitutional.
Id. , 57 P. at 451. The Montana Supreme Court reached that conclusion in a case that did not involve a facial challenge. In other words, they reached it without applying any presumption in favor of constitutionality. Surely, with the application of the appropriate standard of review, we must reach the same conclusion. Constitutional approval authority and statutory approval authority can co-exist. Legislation granting statutory approval authority to other persons or entities does not undermine constitutional approval authority. It merely adds another layer of approval that must be obtained. The treasurer's approval authority under Article 3, Section 31 remains intact.
[¶78] The decisions of the Montana Supreme Court in Smith and in Hogan , 22 Mont. 384, 56 P. 818, a companion case cited by the majority, illustrate another important *1114 point. Denial of a facial challenge does not equate to the absence of a remedy. In the Montana cases, for example, the Court determined that the contract at issue was not enforceable without the requisite consent. Here, however, Appellant has not challenged the validity of any specific contract. He has only asserted a facial challenge.
[¶79] In conclusion, I would reemphasize the heavy burden that must be satisfied to sustain a facial challenge. The majority recognizes that burden and gives a nod to stare decisis .[18] In its analysis, however, the majority has ignored that standard and our precedent. Proper application of that precedent leads inexorably to the conclusion that the challenged legislation does not transfer the approval authority of the treasurer under Article 3, Section 31 to any other person or entity. The treasurer's constitutional approval authority remains intact. Appellant has failed to sustain his facial challenge to the constitutionality of the Capitol Repair Legislation. I would affirm the district court's order denying that challenge.

The full scope of that approval authority is not at issue in this appeal. The constitutional provision does not explicitly provide that the treasurer "must approve" all such contracts. It states that such contracts "shall be subject to the approval of the ... treasurer." The State contends that the constitutional provision merely requires that the treasurer be provided the opportunity to approve or reject the pertinent contracts. The State also contends that the approval may be explicit or implied. There are also potential questions pertaining to the basis for any decision rejecting pertinent contracts. For example, does Article 3, Section 31 provide the treasurer with unfettered veto power over such contracts, or is the treasurer's approval authority restricted in some way? Does the treasurer have approval authority of all contracts that touch in any way on the repairing and furnishing of legislative halls and rooms, or is the approval authority limited to only those portions of a contract that address those aspects of the project?

See majority opinion ¶¶ 60−61.

See majority opinion, footnote 10.