Anthony R. HAMILL, Petitioner,

v.

James FERGUSON, Warden of the Wyoming State Penitentiary, and the Attorney General of the State of Wyoming, Respondents.

No. 95–CV–093–J.

United States District Court,
D. Wyoming.

Aug. 1, 1996.

Anthony R. Hamill, pro se.

William U. Hill, Attorney General of the State of Wyoming, and Lori L. Gorseth, Assistant Attorney General, for respondents.

## MEMORANDUM AND ORDER SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; DISMISSING PETITION WITH PREJUDICE

ALAN B. JOHNSON, Chief Judge.

Before the court are petitioner Anthony R. Hamill's objections to the Magistrate Judge's report and recommendation that his habeas corpus petition be dismissed with prejudice because his claims are procedurally defaulted. Having considered all of the relevant facts and law and the materials submitted by the parties, and having reviewed *de novo* the report and recommendation, the court rejects the Magistrate Judge's conclusion Mr. Hamill's claims are procedurally defaulted, but concludes the petition should be **DISMISSED WITH PREJUDICE**, because the claims asserted therein lack merit.

### I

On February 2, 1979, Mr. Hamill was convicted of three counts of first degree sexual assault in the Wyoming District Court, Sixth Judicial District, Campbell County, and sentenced to not less that 20 years but not more than 45 years in the Wyoming State Penitentiary. His sentence was commuted to a term of not less than 17 years but not more than 45 years on December 19, 1988. On July 9, 1992, Mr. Hamill was granted parole, to commence November 1, 1992. He was paroled to California pursuant to Wyoming's interstate compact for supervision of parolees and probationers. Wyo.Stat. § 7–13–413.

On June 29 and 30, 1994, Mr. Hamill's wife, Patricia Hamill, and Brooke Collins, Mrs. Hamill's daughter, told authorities that Mrs. Hamill had found an audio tape of Mr. Hamill making obscene phone calls to an unknown female, in which he discussed her underwear at some little length. The obscene phone calls occurred in late May or early June 1994, while Mr. Hamill was in Long Beach, California. Brooke Collins also stated Mr. Hamill had made a video tape of himself, naked and masturbating, and showed it to his aunt and grandmother in January 1994, again while he was in Long Beach. Mrs. Hamill, who is a paraplegic, also stated she had an argument with Mr. Hamill on or about June 28, 1994, and that he had grabbed her by the shoulders and shaken her.

On June 30, 1994, California authorities took Mr. Hamill into custody for investigation of charges of indecent exposure, making obscene phone calls, and battery without serious injury. No criminal charges were filed in California, but a parole violation report was filed on July 7, 1994. A preliminary hearing was held in the Los Angeles County Jail on August 11, 1994. The hearing officer found good cause for each of the three charges and stated "[d]ue to the nature of the current violation charges it appears that [Mr. Hamill] is in need of therapy." Because Mr. Hamill was convicted in Wyoming, the hearing officer deferred the decision whether to revoke parole to the Wyoming authorities.

On September 2, 1994, the Liaison to the Wyoming Board of Parole recommended that Mr. Hamill's parole be revoked. Based on this recommendation the Wyoming Board of Parole issued an arrest warrant on the same day. On September 30, 1994, a California Municipal Court held an extradition hearing and, on October 5, 1994, turned Mr. Hamill over to Wyoming authorities. In a letter dated October 5, 1994, the Wyoming Board of Parole directed Mr. Hamill to appear at a parole revocation hearing at the Wyoming State Penitentiary on October 11, 1994. Ac-

cording to Mr. Hamill, he did not receive this letter until October 10, 1994. Mr. Hamill was given the opportunity to continue the hearing to the following month, but he declined to do so. Mr. Hamill also admits he waived his right to have an attorney assist him at the hearing. After the hearing, the Parole Board found he had committed the acts with which he was charged in California, namely, indecent exposure, making an obscene phone call, and battery without serious injury, revoked his parole, and denied him "street credit" for the time he spent on parole in California.

On December 28, 1994, Mr. Hamill filed a petition for a writ of habeas corpus in the Wyoming District Court, Second Judicial District, Carbon County, the pursuant to Wyo.Stat. §§ 1–27–101 through 134, alleging: (1) he was placed in custody in California without a warrant from June 30, 1994, to September 2, 1994; (2) there was an unreasonable delay between his arrest and his preliminary hearing in California; (3) he was not allowed to confront witnesses at the preliminary hearing in California; (4) he had less than 24 hours notice of his parole revocation hearing in Wyoming; (5) his parole revocation hearing in Wyoming was held 104 days after he was taken into custody in California; (6) he was denied an impartial fact finder at the parole revocation hearing in Wyoming; and (7) the Wyoming Board of Parole's findings of fact and conclusions of law did not state the evidence the Parole Board relied on in revoking parole. The respondents moved to dismiss the petition. The Wyoming District Court granted the respondents' motion and dismissed the petition, because under Wyoming law, habeas corpus is available only to challenge the jurisdiction of the forum which ordered the petitioner to be confined, and the Parole Board had jurisdiction under Wyo.Stat. § 7–13–403. Mr. Hamill then filed a petition for a writ of habeas corpus in the Wyoming Supreme Court, asserting the same grounds for relief. The Wyoming Supreme Court denied the petition "for the reason that the petition does not challenge the jurisdiction of the court which imposed a lawful sentence, nor does it challenge the jurisdiction of the Parole Board to revoke grants of parole." The Wyoming Supreme

Court also observed that "[Mr.] Hamill misapprehends the remedy available under Wyoming's habeas corpus statutes and he has filed a petition which is framed in a style appropriate for federal habeas corpus."

On May 9, 1995, Mr. Hamill filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the same claims he raised in his petition for a writ of habeas corpus filed in the Wyoming District Court and the Wyoming Supreme Court, with the exception of claim (1). The court referred the matter to a Magistrate Judge pursuant to 28 U.S.C. § 636(b) and U.S.D.C.L.R. 501 and 502. The respondents subsequently moved to dismiss the petition on the ground Mr. Hamill's claims were procedurally defaulted or, in the alternative, that they lacked merit. On January 8, 1996, after receiving and considering Mr. Hamill's traverse, the Magistrate Judge issued a report and recommendation stating the petition should be dismissed with prejudice because Mr. Hamill's claims were procedurally defaulted. The Magistrate Judge concluded that Mr. Hamill had failed to exhaust the remedies available to him under state law by giving the Wyoming Supreme Court an opportunity to rule on the merits of his claims, because he had raised them in a proceeding in which they were not cognizable. The Magistrate Judge further concluded that Mr. Hamill could have presented his claims to the Wyoming Supreme Court by filing a petition for a writ of review in accordance with W.R.A.P. 13, but that he could no longer do so because the relevant time limit had expired. Because there were no longer any remedies available to Mr. Hamill under state law as a result of his failure to comply with Wyoming's procedural requirements, the Magistrate Judge did not recommend that the petition be dismissed without prejudice to allow Mr. Hamill to attempt to exhaust his claims in state court. Finally, the Magistrate Judge concluded Mr. Hamill had failed to show cause and prejudice for his procedural default or that a miscarriage of justice would result absent consideration of his claims on the merits in federal court. The court has received Mr. Hamill's timely objec-

tions to the report and recommendation and the matter is now ripe for decision.

## II

A federal court will ordinarily dismiss a petition for a writ of habeas corpus under 28 U.S.C. § 2254 if the petitioner has not "fairly presented" the claims raised therein to the highest state court empowered to consider them and given that court an adequate opportunity to rule on the merits. 28 U.S.C. § 2254(b)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1218 (1996); *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982) ("state remedies must be exhausted except in unusual circumstances"); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) ("once [a] federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied"); *Lepiscopo v. Tansy,* 38 F.3d 1128, 1129–30 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1376, 131 L.Ed.2d 230 (1995); *Harris v. Champion,* 15 F.3d 1538, 1554–57 (10th Cir.1994). The purpose of this exhaustion requirement is to "protect the state courts' role in the enforcement of federal law." *Rose,* 455 U.S. at 518, 102 S.Ct. at 1203. "The law of procedural defaults ... applies to preclude federal habeas review of claims that have not been adjudicated on the merits by a state court because of noncompliance with a state procedural rule." *Brecheen v. Reynolds,* 41 F.3d 1343, 1354 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995). In deciding whether a claim has or has not been adjudicated on the merits, we examine the decision of the last state court to which the petitioner presented his federal claims. *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991); *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) ("State procedural bars are not immortal ...; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."). If that state court decision "fairly appeared to rest primarily on resolution of those [federal] claims, or to be interwoven with those claims, and [the state court] did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition" on the merits. *Coleman,* 501 U.S. at 735, 111 S.Ct. at 2557; (footnote omitted); *Klein v. Neal,* 45 F.3d 1395, 1398–99 (10th Cir.1995); *see Brecheen,* 41 F.3d at 1353 (state procedural bar is "independent if it is separate and distinct from federal law [and] adequate if it is applied evenhandedly; that is, if it is strictly and regularly followed") (citations and internal quotation marks omitted); *Steele v. Young,* 11 F.3d 1518, 1521–22 (10th Cir.1993) (same). On the other hand, if the decision of the last state court to consider the petitioner's federal claims "does not fairly appear to rest primarily on federal law or to be interwoven with such law," *i.e.,* if the state court resolved the petitioner's claims on state law grounds without reference to federal law, it is unnecessary for the federal courts to examine the state court's reasoning to determine whether it clearly and expressly relied on an independent and adequate state ground. *Coleman,* 501 U.S. at 739–40, 111 S.Ct. at 2559–60; *Klein,* 45 F.3d at 1399; *Gilbert v. Scott,* 941 F.2d 1065, 1067 (10th Cir.1991). Instead, a federal court will simply hold the state court based its decision on state law, and did not consider and determine the petitioner's federal claims on the merits. *Coleman,* 501 U.S. at 739–40, 111 S.Ct. at 2559–60. Furthermore, if "the petitioner failed to exhaust state remedies [by presenting his federal claims to the highest state court available] and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred [under state law,] there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Id.* at 735 n. 1, 111 S.Ct. at 2557 n. 1; *see Lepiscopo,* 38 F.3d at 1130; *Steele,* 11 F.3d at 1524 ("If ... it is obvious that the unexhausted claim would be

procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review.").

■ In this case, Mr. Hamill clearly did not "fairly present" his claims to the Wyoming Supreme Court by giving that court an opportunity to rule on the merits when he filed his state habeas corpus petition. This is so because, as the Wyoming Supreme Court itself explained in its order denying Mr. Hamill's petition, the only issue a prisoner whose parole has been revoked can raise in a state habeas corpus proceeding is whether the Wyoming Board of Parole had subject matter jurisdiction over his case, had jurisdiction over his person, and acted within the scope of its authority. *See* Wyo.Stat. § 1–27–125 ("Habeas corpus is not permissible to question the correctness of the action of a grand jury in finding a bill of indictment, or a petit jury in the trial of a cause nor of a court or judge when acting within their jurisdiction and in a lawful manner."); *Hopkinson v. State,* 798 P.2d 1186, 1188 (Wyo.1990); *Hennigan v. State,* 746 P.2d 360, 371 (Wyo.1987) ("[T]he accuracy or sufficiency of the grand jury conclusions are not subject to review in a habeas corpus proceeding. The only question which could be raised is whether the grand jury acted in a lawful manner and within its jurisdiction."); *State ex rel. Hopkinson v. District Court,* 696 P.2d 54, 60 (Wyo.) ("A court's judgment cannot be impeached by a writ of habeas corpus except for jurisdictional reasons."), *cert. denied,* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985); *Hovey v. Sheffner,* 16 Wyo. 254, 93 P. 305, 308 (1908) ("'manner' ha[s] reference to the method of acting more than to the degree of perfection or correctness in the results arrived at, so that if a court observes proper methods or means it may be said to be acting in a lawful manner, although it may err in the application of legal principles to such an extent as to involve reversible error."); *Younger v. Hehn,* 12 Wyo. 289, 75 P. 443, 444–45 (1904) (challenge to "the regularity of the method adopted by the court in drawing and summoning the jury" not cognizable in habeas corpus proceeding, because the asserted error "does not affect the jurisdiction of the court pronouncing the judgment"); *Miskimins v. Shaver,* 8 Wyo. 392, 58 P. 411, 415 (1899) ("A finding or decision of the inferior courts, no matter how erroneous, if it does not affect its jurisdiction, is not subject to attack in [a habeas corpus] proceeding."); *Kingen v. Kelley,* 3 Wyo. 566, 28 P. 36, 36 (1891) (it is "clearly the law" that only "[l]ack of jurisdiction of the subject-matter, jurisdiction of the person, or jurisdiction to render the particular judgment" are cognizable in a state habeas corpus proceeding). It is also true, however, that the Wyoming Supreme Court did not deny Mr. Hamill's petition for a writ of habeas corpus because he failed to comply with a state procedural rule, noncompliance with which would prevent the Wyoming Supreme Court from addressing his claims on the merits. Instead, the Wyoming Supreme Court rejected Mr. Hamill's petition because his claims were not cognizable in the type of proceeding he chose to initiate, namely, habeas corpus under Wyo.Stat. §§ 1–27–101 through 134. Accordingly, although Mr. Hamill has yet to "fairly present" his claims to the Wyoming Supreme Court, that court's disposition of his state habeas corpus petition does not amount to a holding he is procedurally barred from "fairly presenting" his claims in some future proceeding before the Wyoming Supreme Court.

■ In light of the above, the question is whether, under Wyoming law, Mr. Hamill could, at any time, "fairly present" his claims to the Wyoming Supreme Court. If this court concludes Mr. Hamill may still "fairly present" his claims to the Wyoming Supreme Court, the appropriate disposition would be to dismiss Mr. Hamill's federal petition without prejudice so that he can press his claims further in state court.[1] On the other hand, if

1. The court is aware that under 28 U.S.C. § 2254(b)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1218 (1996), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." However, as indicated by Congress' use of the word "may," the court has discretion whether to dismiss without prejudice or deny the petition on the merits under such circumstances. In this case, the court

"it is obvious that the unexhausted claim[s] would be procedurally barred in state court," the court "will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Steele,* 11 F.3d at 1524. The third possibility is that there is simply no procedural mechanism that allows the Wyoming courts to review the proceedings and decisions of the Wyoming Board of Parole. If so, Mr. Hamill would be excused from exhausting his claims in state court, and this court would review them on the merits in the first instance. 28 U.S.C. § 2254(b)(1)(B)(i), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1218 (1996) (claims need not be exhausted if "there is an absence of available State corrective process"). The court will therefore review the alternatives available to Mr. Hamill under Wyoming law in an effort to determine whether any of them are now, or have ever been, viable.

### III

"The Wyoming legislature has vested the power to grant parole in the Wyoming [P]arole [B]oard, a part of the executive branch of government." *Dorman v. State,* 665 P.2d 511, 512 (Wyo.1983). The power to revoke parole, unlike the power to revoke probation, is not a judicial function. *Wlodarczyk v. State,* 836 P.2d 279, 289 (Wyo.1992) ("Structurally, there are two revocation processes: (1) judicial revocation for probation; and (2) administrative revocation for parole under the executive agency, Department of Probation and Parole, and the adjudicatory Board of Parole."); *Hewitt v. State,* 835 P.2d 348, 349 (Wyo.1992) ("[P]arole is an executive agency function, incident to confinement following sentence. Probation is a judicial function within which the probation and parole agents provide supervisory assistance to the judiciary."); *Sorenson v. State,* 604 P.2d 1031, 1035–38 (Wyo.1979); *see also Morrissey v. Brewer,* 408 U.S. 471, 486, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972) ("The granting and revocation of parole are matters traditionally handled by administrative officers."). Although it is well established under Wyoming law that a prisoner may directly appeal a court's revocation of probation and the resulting sentence to the Wyoming Supreme Court, *see, e.g., Dickson v. State,* 903 P.2d 1019, 1023 (Wyo.1995), the law governing judicial review of the revocation of parole by the Wyoming Board of Parole is much less clear.

Mr. Hamill could not challenge the revocation of his parole by filing a petition for post-conviction relief under Wyo.Stat. §§ 7–14–101 through 108 (hereafter "the Post–Conviction Relief Act"). *See* Wyo.Stat. § 7–14–103 ("This act does not apply to claims of error or denial of rights in any preceding ... For the revocation of probation or parole."). Also, because the Wyoming legislature has delegated the power to revoke parole to an executive agency and divested the courts of any such power, Mr. Hamill cannot challenge the Wyoming Board of Parole's decision by filing a motion to correct an illegal sentence pursuant to W.R.Cr.P. 35 in Wyoming District Court. *Apodaca v. State,* 891 P.2d 83, 85 (Wyo.1995) ("[Defendant]'s claim relating to the manner in which the executive department of government is directing the service of his sentences cannot be addressed pursuant to a motion under Wyo.R.Crim.P. 35. His contention assumes that the judicial department has some supervisory role with respect to matters that are assigned to the executive department and ignores the constitutional barrier to such action. A Motion to Correct Illegal Sentence is not an appropriate remedy for any question relating to the functions of the executive department of government."). Finally, in light of recent statutory enactments by the Wyoming legislature, he could not challenge the Wyoming Board of Parole's decision under the Wyoming Administrative Procedure Act. Prior to the most recent amendments to the Wyoming Administrative Procedure Act, Wyo.Stat. § 7–13–402(f) (Supp.1991) provided that "[t]he promulgat[ing] of substantive rules by the board and the conduct of its hearings are specifically exempt from all provisions of the Wyo-

would choose to dismiss without prejudice if there were any remedies available to Mr. Hamill in the Wyoming courts.

ming Administrative Procedure Act except the rules and regulations shall be filed in the office of the secretary of state." In *Pisano v. Shillinger*, 835 P.2d 1136, 1138 (Wyo.1992), the Wyoming Supreme Court held this statute prohibited judicial review only of the Wyoming Board of Parole's "conduct" of a parole revocation hearing, which allows the Board to use hearing procedures that are not consistent with the Wyoming Administrative Procedure Act, provided the Board's procedures do not violate the Wyoming or United States Constitutions. *Id.* at 1139. The court explained that "the Board's right to adopt its own procedures simply means that, barring any constitutional limitations, a parolee cannot seek judicial review of the Board's decision upon grounds relating to the conduct of the Board's hearings. However, the fact that the conduct of the hearing is not subject to review does not mean that the decision itself is not subject to review. The conduct of the hearing merely provides the procedural process through which a decision is reached. The Board's decision is still reviewable by the district court pursuant to § 16-3-114(c), which requires, among other things, that the Board's findings be supported by substantial evidence and that its actions not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 1139-40.

Shortly after the Wyoming Supreme Court issued its decision in *Pisano*, the Wyoming Legislature amended Wyo.Stat. § 7-13-402. As amended, Wyo.Stat. § 7-13-402(f) provides in pertinent part that "[t]he promulgat[ing] of substantive rules by the board, the conduct of its hearings *and its final decisions* are specifically exempt from all provisions of the Wyoming Administrative Procedure Act *including the provisions for judicial review under W.S. 16-3-114 and 16-3-115.*" (Emphasis added.) The obvious purpose of the amendment was to completely foreclose judicial review of the proceedings and decisions of the Wyoming Board of Parole under the Wyoming Administrative Procedure Act, including the limited review authorized in *Pisano*, 835 P.2d at 1139-40. *See Brenning v. State*, 870 P.2d 349, 352 (Wyo. 1994) (in light of the amendment to Wyo. Stat. § 7-13-402(f), "the parole board's decisions are now exempt from the provisions of the Wyoming Administrative Procedure Act, including the provisions for judicial review under Wyo.Stat. §§ 16-3-114 and 115 (1990)").[2] This amendment, combined with the Wyoming Supreme Court's observation in *Pisano* that the legislature has not provided any other statutory mechanism for judicial review of parole revocation decisions, *Pisano*, 835 P.2d at 1138, makes it clear there is no statutory mechanism for judicial review of the proceedings and decision of the Wyoming Board of Parole.

Nevertheless, despite the legislature's clear intent to preclude judicial review under the Wyoming Administrative Procedure Act and the Post-Conviction Relief Act, and its silence regarding any other mechanism for judicial review, the Wyoming Supreme Court may rely on its authority under Art. 5, § 3, of the Wyoming Constitution, which grants that court "original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus" and the "power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." Furthermore, Wyo. Const. Art. 5, § 10, gives the Wyoming District Courts the "power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, injunction and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective districts." The Wyoming Supreme appears to have acknowledged its power to grant writs under Wyo. Const. Art. 5, § 3, despite the most recent amendment to Wyo.Stat. § 7-13-402(f), when it decided Mr. Hamill's own case. In the order denying Mr. Hamill's petition, the Wyoming Supreme Court acknowledged it retains the authority to issue writs of habeas corpus in cases in which the Wyoming Board

---

2. Because the Wyoming Administrative Procedure Act does not permit judicial review, W.R.A.P. 12 has no application. *Brandt v. TCI Cablevision of Wyoming*, 873 P.2d 595 (Wyo. 1994) ("Wyo.R.App.P. 12 provides the same right to judicial review of administrative action as WAPA").

of Parole lacked subject matter jurisdiction over the parole revocation proceeding, lacked personal jurisdiction over the prisoner, or otherwise exceeded its jurisdiction. Accordingly, under Wyoming law, the writ of habeas corpus is still available to test the actions of the Wyoming Board of Parole, albeit under extremely limited circumstances.

The Attorney General cites no case law to support the proposition that any of the other writs permitted under Wyo. Const. Art. 5, §§ 3 and 10, are available to correct nonjurisdictional error by the Wyoming Board of Parole, and the court's own research leads it to conclude none of these writs are appropriate. Most notably, because the Wyoming Board of Parole is not a court, *Pisano*, 835 P.2d 1136, 1138 (Wyo.1992) (parole revocation by the Wyoming Board of Parole is an administrative, rather than a judicial act); *Hewitt*, 835 P.2d at 349 ("[P]arole is an executive agency function, incident to confinement following sentence. Probation is a judicial function within which the probation and parole agents provide supervisory assistance to the judiciary."), a petition for a common law writ of certiorari pursuant to Wyo. Const. Art. 5, § 3, filed in the Wyoming Supreme Court, or Wyo. Const. Art. 5, § 10, filed in Wyoming District Court, would not be an appropriate method for obtaining review. *In re Big Horn River System*, 803 P.2d 61, 67 (Wyo.1990) ("Finding its source in the common law, the writ of certiorari is issued by a *superior court* to an *inferior court* and directs the lower court to transmit its records of proceedings to the appellate court for review.") (emphasis added). Finally, the court is not aware of any case law holding any of the other writs allowed under Wyo. Const. Art. 5, §§ 3 and 10, apply to nonjurisdictional challenges to the proceedings and decisions of the Wyoming Board of Parole, and it finds it unlikely the Wyoming Supreme Court would so hold.

The Attorney General has identified only one type of proceeding in which he asserts Mr. Hamill could have fairly presented his claims to the Wyoming Supreme Court, namely, a petition for review pursuant to W.R.A.P. 13.01(b), which provides "[a]ll applications to a district court for interlocutory or extraordinary relief from orders of administrative agencies ... including such applications as are established by statute, may be made as petitions for a writ of review." Arguably, this rule could be read as stating a party may obtain "extraordinary relief" from an agency decision, *i.e.*, an order revoking parole by the Wyoming Board of Parole, by petitioning for a writ of review, even though the judicial review procedures of the Wyoming Administrative Procedure Act and W.R.A.P. 12 do not apply. This would distinguish the writ of review from the common law writ of certiorari authorized under Wyo. Const. Art. 5, §§ 3 and 10, as defined in *In re Big Horn River System*, 803 P.2d at 67, in that the writ of review would allow judicial review of decisions other than those of inferior courts. Nevertheless, the court declines to conclude, as did the Magistrate Judge, that Mr. Hamill could and should have sought a writ of review in the Wyoming Supreme Court. First, the court is not aware of any authority from the Wyoming Supreme Court authorizing the use of the writ of review under W.R.A.P. 13 as an independent basis for challenging a decision of the Wyoming Board of Parole. In fact, given the Wyoming legislature's clear intent to prohibit such review, it is quite likely the Wyoming Supreme Court would hold judicial review by writ of review is not permissible. Second, and more important, if the court were to conclude Mr. Hamill could have presented his claims in a petition for a writ of review, the court would be required to conclude his claims are procedurally defaulted in federal court, because he failed to petition for a writ of review within 11 days after the Wyoming Board of Parole revoked his parole. *See* W.R.A.P. 13.03(a) ("A petition for a writ of review must be filed with the reviewing court within 11 days after entry of the order from which relief is sought."). The court will not hold Mr. Hamill has procedurally defaulted in federal court merely because he failed to pursue in a timely fashion a remedy which no Wyoming Supreme Court decision has ever suggested might be available to him. In the absence of some case law which makes it clear there was a remedy available to Mr. Hamill under W.R.A.P. 13, the court will not hold Mr. Hamill's claims

are procedurally defaulted and dismiss them with prejudice based merely on speculation as to what Wyoming's procedure *might be.*

In light of the above, the court concludes "there is an absence of State corrective process" within the meaning of 28 U.S.C. § 2254(b)(1)(B)(i), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1218 (1996), at least for non-jurisdictional challenges to the actions of the Wyoming Board of Parole. Accordingly, the court will consider the merits of Mr. Hamill's federal claims. *See Harris,* 15 F.3d at 1557 ("Once exhaustion is excused, a federal court has the power to review the merits of a petitioner's habeas petition to the extent that it raises federal issues."). To the extent Mr. Hamill's claims are founded solely on state law, however, they cannot serve as a ground for federal habeas corpus relief. *Id.* ("to the extent the petitioner's underlying claims of error are state claims, the federal court cannot review them even if exhaustion is excused, because federal habeas review is limited to alleged 'violation[s] of the Constitution or laws or treaties of the United States'") (citations omitted). Accordingly, the State of Wyoming's decision not to provide a judicial remedy for nonjurisdictional errors by the Wyoming Board of Parole and to force the federal courts to assume the responsibility for correcting such errors has left no remedy available for nonjurisdictional errors of state law by the Wyoming Board of Parole. As a result, the Wyoming Board of Parole is beyond the reach of the state and federal courts, at least with respect to nonjurisdictional errors of state law.

### IV

 The court will now examine the merits of Mr. Hamill's federal claims. "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600. However, under the due process clause of the Fourteenth Amendment, a parolee is entitled to certain procedural safeguards. First, "due process ... require[s] that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485, 92 S.Ct. at 2602. At this preliminary hearing, the presiding officer must determine whether there is "probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* The presiding officer should not be one directly involved in the case, such as the parole officer, but he need not be a judicial officer. *Id.* at 485–86, 92 S.Ct. at 2602–03. The parolee is also entitled to "notice that the hearing will take place[,] that its purpose is to determine whether there is probable cause to believe he has committed a parole violation[, and] what parole violations have been alleged." *Id.* at 486–87, 92 S.Ct. at 2603. The parolee may appear and testify on his own behalf, present witnesses and evidence, and, provided the parolee requests the opportunity to do so, he may confront the witnesses against him, unless the hearing officer "determines that the informant would be subject to risk of harm if his identity were disclosed." *Id.* at 487, 92 S.Ct. at 2603. "The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the response of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position." *Id.* If the hearing officer finds there is probable cause, he must state the reasons for his decision and indicate what evidence he relied upon. *Id.*

 If the hearing officer finds probable cause, "[t]here must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority." *Morrissey,* 408 U.S. at 487–88, 92 S.Ct. at 2603. The hearing must occur within a reasonable time after the parolee is taken into custody. *Id.* at 488, 92 S.Ct. at 2603. At the hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.*

The minimum requirements of due process also require "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole." *Id.* at 489, 92 S.Ct. at 2604. Requirements (a) through (f) are identical to the rights that obtain during the preliminary hearing, discussed above.

Mr. Hamill contends the parole revocation proceedings in his case fell short of the requirements of the due process clause of the Fourteenth Amendment in six respects: (1) there was an unreasonable delay between his arrest and his preliminary hearing in California; (2) he was not allowed to confront witnesses at the preliminary hearing in California; (3) he had less than 24 hours notice of his parole revocation hearing in Wyoming; (4) his parole revocation hearing in Wyoming was held 104 days after he was taken into custody in California; (5) he was denied an impartial fact finder at the parole revocation hearing in Wyoming; and (6) the Wyoming Board of Parole's findings of fact and conclusions of law did not state the evidence the Parole Board relied on in revoking parole.

■ The court rejects each of Mr. Hamill's claims and concludes the parole revocation proceedings were constitutionally adequate. Regarding claims (1) and (4), the court concludes that neither the 43–day delay between Mr. Hamill's arrest on June 30, 1994, and his preliminary hearing in California on August 11, 1994, nor 104–day delay between his arrest and his final parole revocation hearing in Wyoming on October 11, 1994, were so unreasonable as to violate his Fourteenth Amendment due process rights. In *Morrissey* itself, the Supreme Court stated "[a] lapse of two months [between the arrest and the final revocation hearing] . . .

would not appear to be unreasonable." *Morrissey,* 408 U.S. at 488, 92 S.Ct. at 2604. Given additional complexities of Mr. Hamill's case, especially the fact that authorities in two states, California and Wyoming, were involved in the arrest, investigation, parole revocation, and extradition proceedings and were required to coordinate their actions, the court concludes the delays were not unreasonable.

■ Regarding claim (2), the record shows only one witness was present at the preliminary hearing, Pam Eubanks, but that the hearing officer relied on testimony from three other witnesses, Patricia Hamill, Brooke Collins, and Debbie Dobson. Mr. Hamill concedes in his petition that "[i]n this case the parolee knew of the witnesses as their names were listed to appear." The record further demonstrates that Mr. Hamill had the opportunity to request that Mrs. Hamill, Ms. Collins, and Ms. Dobson be subpoenaed and that he be allowed to cross-examine them, but that he only requested that a subpoena be served on Mrs. Hamill. Mrs. Hamill was indeed subpoenaed in accordance with Mr. Hamill's request, but she failed to appear for some unknown reason. The failure to produce Ms. Collins and Ms. Dobson so that Mr. Hamill could cross-examine them did not violate the Fourteenth Amendment, because the right to confront witnesses arises only if the parolee requests that the witnesses be subpoenaed. *Morrissey,* 408 U.S. at 487, 92 S.Ct. at 2603 ("*On request of the parolee,* a person who has given adverse information on which the parole revocation is to be based is to be made available for questioning in his presence.") (emphasis added). As for Mrs. Hamill, the court concludes her failure to appear was the result of her own refusal to comply with the subpoena, and not from any failure on the part of the hearing officer to diligently attempt to secure her presence at the preliminary hearing.

■ Regarding claim (3), the court finds the Wyoming Board of Parole did not violate Mr. Hamill's Fourteenth Amendment rights when it served him with written notice on October 10, 1994, that his parole revocation hearing was scheduled for October 11, 1994.

It is true that the notice was tardy, and that the failure to provide more timely notice is not to be encouraged. However, the respondents have submitted an affidavit from the Parole Board Coordinator, in which he avers that he met with Mr. Hamill shortly before the October 11, 1994, hearing and advised him that "if he was not prepared to proceed with his revocation hearing or if he wanted time too [sic] consult with an attorney, he could waive the scheduled revocation hearing date and reschedule it at a later date." The Parole Board Coordinator also avers that if Mr. Hamill had requested a continuance, his request would not have been construed as a waiver of his right to a revocation hearing or as an admission of guilt. In light of this affidavit, the court finds Mr. Hamill was fully advised that he could have requested a continuance, that the Wyoming Board of Parole did nothing to mislead him regarding the availability or consequences of such a request, and that it was up to Mr. Hamill whether to participate in the October 11, 1994, hearing despite his asserted lack of preparation or to seek a continuance. Having made his choice, Mr. Hamill must now abide by the results.

The court also rejects claim (5), in which Mr. Hamill asserts he was denied his right to an impartial fact finder at the parole revocation hearing because Mr. Shane Sconce, the Special Services Supervisor and Supervisor of Interstate Matters for the Wyoming Department of Corrections, Division of Field Services, who initiated the parole revocation proceedings and represented the State of Wyoming during the parole revocation hearing, remained in the same room with the Wyoming Board of Parole while the Board was deliberating after the parole revocation hearing had ended. The court agrees with Mr. Hamill that Mr. Sconce should have been directed to leave the room during deliberations. However, the respondents have submitted an affidavit from Mr. Sconce, in which he avers that "[d]uring the Parole Board's deliberation, I was present but I made no comments during the deliberation nor was I asked any questions by the Parole Board." In light of this affidavit, the court finds Mr. Sconce's silent presence during deliberations, although inappropriate, had no impact on the Board's decision.

In claim (6), Mr. Hamill contends the Wyoming Board of Parole failed to adequately state "the evidence relied on and [the] reasons for revoking parole," *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, in its written decision. Although the court agrees the written decision was not a model of thoroughness, the court concludes it was constitutionally adequate. Finally, with respect to all claims, the court concludes Mr. Hamill has failed to demonstrate he suffered prejudice as a result of the asserted constitutional violations, and that the result of the parole revocation proceedings would have been the same.

## V

For the reasons stated, **IT IS HEREBY ORDERED** that Mr. Hamill's objections to the Magistrate Judge's report and recommendation are **SUSTAINED IN PART AND OVERRULED IN PART.** It is further

**ORDERED** that Mr. Hamill's petition is **DISMISSED WITH PREJUDICE.**